## L. A. LESSLEY et al. *v.* L. J. PHIPPS.

1. EXEMPTION.—How OBTAINED—How LOST,—Code of 1857, article 281, page 529, gives the exemption to the "householder having a family," "the land and buildings owned and occupied as a residence," provided the quantity shall not exceed one hundred and sixty acres." It has been held, in exposition of this section, if the occupancy of the land as a residence begins after the rendition of the judgment, and before sale, the exemption inures. Trotter v. Dobbs, 38 Miss., 198, The right continues upon the condition of occupancy as a residence. If the premises are abandoned, the right is gone, and the property is liable to judgment creditors of the debtor. Whitworth v. Lyons, 39 Miss., 467, Nothing more is demanded of the insolvent debtor than that he shall make his home upon the premises. Residence imparts the exemption; its continuance preserves it,

2. CONTRACTS—OBLIGATION THEREOF—REMEDY TO ENFORCE.—The obligation of a contract is the legal duty of performing it according to its terms, There can be no legal duty without a remedy or means of enforcing it, for without such remedy, a contract is a mere imperfect obligation, depending for its performance upon the will of him from whom performance is expected. Parties, therefore, who enter into contracts, must be considered as looking to the municipal law for a remedy to enforce it, and this law thus enters into and forms a part of the obligation.

3. SAME—LAWS IMPAIRING OBLIGATION THEREOF.—Whilst a State, in the exercise of its undoubted power to prescribe forms, actions and modes of procedure, may alter and modify the remedy as it existed at the time a contract was made, yet it is under a duty imposed by that clause of the Federal constitution which prohibits the States from passing laws impairing the obligation of contracts, if it interfere at all, it must leave in existence a remedy as efficient and substantial as that which subsisted when the contract was made ; for the remedy being necessarily inseparable from the obligation, any law which clogs it with conditions and restrictions which materially impair its efficiency and which did not exist when the contract was made, impairs, necessarily, the obligation.

4. SAME—SAME,—Tho right to seize and sell, by judicial process, a debtor's property, in satisfaction of a judgment against him, is a material part of the remedy for tho enforcement of the contract on which the judgment is founded, and any law of a State which materially increases the amount of property exempt by law from execution, over the amount allowed when the contract was made, impairs the remedy materially, and is therefore prohibited by the Federal constitution.

5. SAME—INCREASED EXEMPTION—WHEN VOID.—The exemption law of Mississippi, passed in 1865, which increased the homestead exemption from one hundred and sixty acres of land, not exceeding $1,500.00 in value, to two hundred and forty acres, regardless of its value, is, when applied to debts created before its passage, in violation of that clause of the Federal constitution which prohibits States from passing laws impairing the obligation of contracts.

Appeal from the chancery court of Adams county. Hon. D. N. WALKER, Chancellor.

The facts of the case are sufficiently stated in the opinion of the court,

*A. H. Handy* and *Winchester & North,* for appellants:

The bills in this case are framed with a double aspect.

1. Considering the appellee's claim as invalid, it is alleged to be a cloud, and to cast a doubt and suspicion upon the title and interest of appellants, which a court of equity has jurisdiction to remove.

2. If the appellee is entitled to hold 240 acres of the land, as claimed by her, since that has not been ascertained and set apart to her in severalty, and she is in the use and possession of the entire tract of 1100 acres, a court of equity has jurisdiction to award a partition, and to allot her separate part, leaving to the appellants—the widow and heir at law of the purchaser at sheriff's sale—the residue, in which they have an interest, but which interests in severalty can only be ascertained after the part to which the appellee may be entitled, shall have been set apart to her.

I. That the claim of appellee is invalid, and, under the circumstances under which it was made, that she was not entitled to the exemption claimed.

Such a claim is purely the creature of statute; and, in this case, it is rested on the statute of 1865, ch. 9. The facts stated in the amended bill, which the demurrer admits, do not entitle her to the benefit of the statute exemption.

By section 5 of that act, the right was given her to " *designate specifically* " the property—that is, in this case, the part of the land—which she " *claimed* as exempt; " and after that was done, the property " *so specifically designated* " was forbidden to be levied on, otherwise than is provided for in section 4 of the same act, which enacted, that in case of doubt as to the liability of any property to be taken in execution, the officer should summon three disinterested citizens to determine the matter.

The law does not *force him* into the position of an exempt property holder. It simply gives him the *privilege to elect* to become so; which he may exercise, or he may waive it. This statute, which gives the right, at the same time limits

the terms of its enjoyment, and imposes the duty *of election* on the debtor, to be exercised *in such manner* as not to operate to the undue detriment of the creditor. As to the *time* when the right may be asserted, the debtor must *claim* the benefit of the exemption *within due season.* 20 Penn. St. R., 142. If he neglects to assert his right in due season, it is thereby waived. 19 Penn. St. R., 257.

II. But the claim asserted here by the appellee is invalid. She is still in possession, claiming and exercising control over the entire plantation, and asserting title to a considerable part of it; and, in the language of the Code of 1871, § 975, she " asserts a claim, or pretends to have some right or title thereto, which causes a doubt or suspicion in the title " of the appellants. These facts clearly give jurisdiction in equity, in virtue of the statute, to have the cloud and doubt removed from appellant's title.

III. If, however, the right of exemption of 240 acres of the plantation is valid, under the circumstances stated in the bill, a court of equity has jurisdiction to award partition between the appellees and the appellants, who have a unity of interest in this respect, allotting to the appellee her exempt portion, and leaving to the appellants the residue. The interests and portion of the appallants in severalty, can not be ascertained until the share of the appellee, if, indeed, she is entitled to any, shall have been apportioned to her; for the interests of appellants will then attach to the residue. Hence the necessity of the aid of a court of equity, to have the appellee's share set apart.

The bill prays, *in the disjunctive,* for such relief as the nature of the case may require, and which may be consonant with equity, and for general relief. Under this prayer, a court of equity may grant such equitable relief as the circumstances of the case may render proper. Dease v. Moody, 31 Miss., 617.

*W. F. Mellen,* for appellee :

ₒontended that complainant's (Mrs. Lessley) remedy for the

recovery of her dower was adequate at law, under the provisions of the Code. As to her rights, the bill is multifarious. She does not claim dower, and therefore has no right to make herself a party to the suit.

All joint tenants, tenants in common, may recover their undivided interests in an action of ejectment. Code of 1871, title Ejectment; Gordon v. Sizer, 39 Miss., 805. If the sale operated as an alienation of the whole property, the notice or claim of the defendant can be and is no cloud whatever on the title. But if a cloud only, and complainants have the legal title, equity, when properly resorted to, will remove the cloud. But equity will not allot dower, ascertain undivided interests, determine exemptions, decree partitions, remove clouds, disturb possession by injunction or by partitions, and decree perpetual injunctions against setting up titles, all at one time, on the same bill, and in the same cause. And yet all of these are set up and asked to be done in this bill of complaint. The bill is, therefore, palpably multifarious.

The complainants contend that as the claim of exemption was not made before the levy of the attachment, it did not have the effect to exempt any portion of the property. Exemption means absolute freedom from liability to seizure and sale. No seizure or sale of a homestead without the knowledge or consent of the debtor, and whether a claim to a homestead or not can be legal or can divest the head of the family of his title. The intent of the statute is to secure the debtor and his family a home; and this humane purpose ought not to be defeated. 41 Miss., 127; Thoms v. Thoms, 45 Miss., 263. A man may, even on the the day of the sale, under execution, make an election which of two lots he will hold as a homestead, and withdraw it from the sale to the extent of his homestead right. Tomlinson v. Swinney, 22 Ark., 400; Scara v. Hanks, 14 Ohio, N. S., 29. A homestead is not subject to attachment. Grubbs v. Ellyson, 23 Ark., 287. Nor to sale under execution. Tomlinson v. Swinney, supra; Tucker v. Kennison, 47 N. H., 267; Fogg v. Fogg, 46 ib., 282.

A homestead is a vested right, and when once acquired by a man, and still occupied by him, is not defeated even by the death or absence of his family. 6 Allen, 73; 12 ib., 34; Thoms v. Thoms, 45 Miss. Under the homestead act, which provides that, except in certain cases, the homestead shall not be liable to levy or sale, no judgment lien can attach, so that if the exemption ceases to exist, the first levy will bind the property whether execution issued, on a junior or senior judgment. Green v. Marks, 25 Ill., 221; Bliss v. Clark, 39 ib., 590; Thoms v. Thoms, 45 Miss., *supra.* The exempt property, upon the death of the owner, intestate, descends directly to the widow and children, and vests by operation of law absolutely in them, without any condition, limitation, or restriction as to their right to the same. And although it is made the duty of the appraiser of an estate, for convenience and to prevent litigation, to designate and set apart said property to the widow and children, yet their title to the same does not depend upon any action of the appraisers. Wally v. Wally, 41 Miss., 657; Holliday v. Holland, ib., 528; Whitley v. Stephenson, 38 ib. 115, 40 ib., 49; Smith v. Allen, 39 ib., 469; Whitworth v. Lyon, ib., 467; Hardin v. Osborne, 43 ib., 533; Stephenson v. Osborne, 41 ib., 127.

Nothing short of a voluntary abandonment of a homestead, and so understood by all the parties in interest, will divest the estate of the homestead interest charged therein. Locke v. Powell, 47 N. H., 46; Thoms v. Thoms, *supra.* The sale of exempt property under execution does not destroy its character as such. Mason v. O'Brien, 42 Miss., 428. A homestead can be acquired by acts done after the levy and before the sale, where there is no fraud, and the question of homestead must be tried on the facts existing at the time of the sale. Stone v. Donnell, 20 Tex., 11. It devolves upon the purchaser to show that the property was not exempt when sold. 7 Mich., 488. The question of homestead or not is a question for a jury in a court of law, but not a court of chancery. Occupation is *prima facie*

evidence of a dedication. Tomlinson v. Swinney, 22 Ark., 400 ; Locke v. Powell, 47 N. H., 46; 20 Tex., 11; Cook v. McChristian, 4 Cal., 26.

SIMRALL, J., delivered the opinion of the court :

In July, 1867, James G. Lessley bought at sheriff's sale, under judgments in attachment against the defendant, Mrs. Phipps, the plantation, being the lands about which this controversy arose. At the date of the rendition of these judgments, and of the sheriff's sale, Mrs. Phipps was residing upon, and in occupancy of the lands. Before the sale, on the 13th of June, 1867, Mrs. Phipps gave to the sheriff a notice to be read at the sale, and returned with the executions, that she claimed as exempt from execution 240 acres of the land, also household and kitchen furniture, &c., &c. This notice was read at the sale, and the deed from the sheriff to James G. Lessley, the purchaser, contained a recital in substance of the notice. Mrs. Phipps acquired the lands by inheritance from her father, jointly with a co-heir who released or quit claimed to her.

Mrs. Phipps had not, before the date of the attachments and judgments, nor at any time before the notice referred to, set up or made known a claim to any part of the lands, under the exemption laws. Neither did she at the sale, nor since, designate specifically the portion which she claimed as exempt. She resided upon the premises, and used the same for agricultural purposes, before, at the time of the sale and since, having done no act, indicative of a distinct and separate use and possession of 240 acres by reason of exemption. The sale only produced a partial satisfaction of the judgments, large balances being yet due and unpaid.

James G. Lessley died intestate, leaving the complainant, Letitia A., his widow, and complainant Margaret, his only child and heir. The widow has been appointed administratrix of his estate.

The widow, Letitia A., is entitled to dower to one-third of

the lands, the entire tract, unless Mrs. Phipps shall establish her exemption to a portion of it.

Mrs. Lessley, as widow and claimant of dower, and Margaret, as heir of James G. Lessley, exhibit the foregoing facts in their bill, asserting that the claim of exemption made by Mrs. Phipps, to 240 acres in her notice, is too large; that in no event can she, if entitled to anything, have more than 160 acres; and further asserting that she did not, at or before the sale, perfect a right to any exemption whatever.

The position has been advanced in argument, by the counsel for appellants, that Mrs. Phipps was under a duty, before the sale by the sheriff, to do some act by which she indicated and marked the boundaries of her exemption claim, and not having done so, she must be taken to have waived it. In several of the States the statutes require that there shall be some memorial of record, defining that the insolvent debtor holds and claims to hold the land with specific boundaries, as an exempt homestead. Such is the law of Maine, Massachusetts, and other States. 1 Wash. Real Est., 340, *et seq.* There is no such feature in our law. Art. 281, Code 1857, p. 529, gives the exemption to the "householder having a family, the land and buildings owned and occupied as a residence, provided the quantity shall not exceed 160 acres." It has been held in exposition of this section, that if the occupancy of the 160 acres as a residence begins after the rendition of the judgment, and before sale, the exemption inures. Trotter v. Dobbs, 38 Miss., 198. The right continues upon the condition of occupancy as a residence; if the premises are absolutely abandored, the right of the insolvent debtor is gone, and the property is open to judgment creditors of the debtor. Whitworth v. Lyons, 39 Miss., 467; Campbell v. Adair ,45 Miss. Rep., 170; Thoms v. Thoms, ib., 263; Nye, Ex'r, v. Smith, MSS. Opinion. Nothing more is demanded of the insolvent debtor by this section (281) than that he shall make his home and residence upon the premises. The residence imparts the exemption, its continuance preserves it. There would be no difficulty under this section, if the quan-

tity of land did not exceed one hundred and sixty acres, and its value was not greater than $1500.00. Morrison v. McDaniel, 30 Miss. Rep., 217. The next section, 282, provides for a case where the land exceeds 160 acres, or $1500.00 in value. The officer holding the execution, shall appoint three freeholders, who shall set off not exceeding 160 acres, including the dwelling-house, and not exceeding $1500.00 in value, which shall be returned with the execution, and the part so set off, shall be exempt, but the residue may be sold. The 4th section of the act of 1865, p. 138, is, in effect, the 282d section of the Code, directing the sheriff, when any doubt shall arise, as to the liability of any "*specific*" property to appoint the commissioners. This statute being, as it declares, an amendment of the existing laws, and only repealable so far as inconsistent and repugnant thereto, must receive that exposition from the courts. This 4th section applies to both real and personal estate, where the "specific" property is in question or doubt as to liability to process. The 5th section enables the debtor specifically to designate the property claimed as exempt.

From this review of the statutes, supposed by counsel to have any application to this case, it appears manifest that the debtor does not lose the benefit of the homestead, unless he adopts measures to withdraw it from the execution before sale. No form is required to notify creditors that the right will be insisted upon. The 5th section of art. 7, 1865, does not direct a "formula" of designating the property claimed. It is probable that it means no more than that the "designation" shall be made to the sheriff or officer who holds the writ.

The title to exemption is dependent on the facts of the debtor being the head of a family, and residing upon the premises as a home. Whenever his title is brought into controversy, the evidences that establish it are the proof of those facts. His title, whether a life estate, determinable on condition subsequent, or however defined, is manifested to creditors by his occupancy of the residence, as head of a

family. It is the result or implication of law from the facts. It is quite as competent to create an estate in lands, in that mode, as by the assignment of dower, by descent, or by deed of bargain and sale.

The theory of these laws is, that there is reserved to the insolvent debtor a portion of his land and personal effects, which are put beyond the reach of legal process, so long as the debtor observes the conditions upon which he may, as respects the land, enjoy the homestead.

If, therefore, he has not forfeited his right, as by abandonment, the sheriff is forbidden to levy upon the homestead. It is not subject to execution. If he takes, in execution, exempt personal property, he is liable in trespass, or trover, or the debtor may bring replevin against a purchaser from him. Mosely v. Anderson, 40 Miss. Rep., 49. If the sheriff could not rightfully levy the debt on the property, a purchaser from him would get no title.

But in this case, the bill shows that Mrs. Phipps owned the entire plantation; was resident upon it; and further, that she notified the sheriff before the sale that she claimed exemption. It was his duty, under the law, to have appointed the freeholders to determine and mark it out. His failure to do so does not defeat her right. Nor was she obliged, under the fifth section of the act of 1865, under pain of a forfeiture, or loss of right, to designate specifically what she claimed.

It remains to be considered whether the homestead shall be assigned under the law in force at the date of incurring the debts, or under the subsequent statute of 1865. Several cases are before us involving this question, which have been ably argued, viz.: Pennington v. Seal et al.; Yongue v. Carroll, Hoy & Co.; Gallagher v. McCauley. Aware of its importance and delicacy, we have given to it careful consideration. The later statute having largely increased the exemption, the argument on the one side is, that it impairs the obligation of the contract, and is therefore void and inoperative as to all debts existing at the date of its en-

actment; whilst for the debtor it is claimed to be legitimate legislation, which affects the remedy, and does not disturb the contract.

The restrictions on the legislative power of the States, contained in the Federal constitution, are founded on the motive of shielding the people in their persons and property from the effect of legislation arising in passion and impulse, caused by unusual emergencies, to which communities, like individuals, are exposed. They were said by Chief Justice Marshall to be like " a bill of rights for the people." " No State shall pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts."

The constitution being the supreme law, and the supreme court of the United States its ultimate and authoritative expounder, we must refer to the judgments of that tribunal for the obligatory rule, to control our decision. Upon no clause of that instrument has there been as much discussion as has been expended to determine what is the obligation of a contract, and what must be the character of the State legislation which impairs it. All would agree that a State could not abrogate a contract, made between two individuals, legal when entered into. The debatable ground begins most generally, when a law proposing to regulate the remedy, is challenged for trenching upon the right. It never has been denied that the legislative power extends to a modification of the remedy. This was distinctly stated in the early case of Sturgess v. Crowningshield, 4 Wheat., 122. It is necesssary, or there can be no improvements and amelioration of the remedial machinery of the law. The impossible task has been and is to define the limits beyond which remedial legislation may not go, without infringing upon the " right." In Green v. Biddle, 8 Wheat, 1, it was said that a law which clogs the remedy by conditions and restrictions tending to diminish the value and amount of the thing recovered, impairs the right; this language was suggested by the occupant claimant laws of Kentucky, the validity of which were the subject of controversy. It was further said that if

the new remedies materially impair the right, it is as much a violation of the compact, as if they overturned the right. Ch. J. Taney, in Bronson v. Kinzie, 1 How., 311, concurred fully in the rule, as thus stated, adding that the " remedy is the part of the municipal law which protects the right and the obligation by which it enforces and maintains it." " It is this protection which the (inhibitory) clause of the constitution was mainly intended to secure." These principles were again affirmed in Curran v. State of Arkansas *et al.*, 13 How., 319, and Freeman v. Howe *et al.*, 24 How., 460. Without citing all the cases which consider the subject, we come to the later ones, which hold a sterner · and more definite tone, thus in Von Hoffman v. City of Quincy, 4 Wallace, 550, it is declared that laws which subsist at the time and place of making the contract, which affect its validity, construction, discharge and enforcement, enter into and form a part of it, as much so, as if they rested on the basis of a distinct agreement. In Planters' Bank v. Sharp, 6 How., 327, remarking on the point of how far remedial legislation may go, the court say : " It is not a question of degree ; it shall not impair the value of the contract at all." In White v. Hart, 13 Wallace, 653, the doctrine enunciated in Von Hoffman v. City of Quincy, is re-affirmed, quoting with approbation the words of the former judgment, in which it is stated. In the last reported case of Gunn v. Barry, 15 Wallace, (1872,) the court use this language : " The legal remedies for the enforcement of a contract, which belong to it at the time and place where it is made, are a part of its obligation ; the State may change them, provided the change involves no impairment of a substantial right. If the act fall within the category last mentioned, it is to that extent utterly void." Quite as emphatic is the case of Walker v. Whitehead, in same court, not yet reported.

We have quoted thus freely the language of the court in the several cases, especially the more recent ones, in order to ascertain, as dististinctly as may be, the " rule " in the abstract. It will be observed, that instead of relaxation, the

later cases cling with tenacity to the strict integrity of the contract, and repudiate all legislation which in effect impairs its force and value.

We think the rules deducible from the cases may be reduced to these formulas.

The obligations of a contract is the duty of performance according to its terms. The remedy or means of enforcement, being a part of the "obligations," which the States cannot by legislation impair. The municipal law enters into and forms a part of this obligation, and to that, parties must be considered as referring, in order to enforce performance.

Whilst the State may modify the remedy, it is under a duty, if it interferes at all, to provide a remedy as efficient and substantial as that subsisting when the contract was made.

The remedy is inseparable from the obligation, otherwise the contract would be of the nature of those imperfect obligations or moral duties, subject to the mere caprice and will of individuals.

Whilst the State is left free to alter the remedy, to prescribe the modes of suit and process, it cannot clog it with conditions and restrictions so as materially to impair its efficiency.

We will recur to a few of the more pertinent cases, in order to see the application of these principles to remedial laws called in question as impairing the contract.

In Bronson v. Kinzie, 1 How., 297, after the execution of the mortgage in question, the legislature of Illinois passed a law, requiring mortgaged property to bring two-thirds of its appraised value, and allowed to the mortgagor a year after the sale to redeem. These new conditions upon the pre-existing remedy were held to impair the right. In McCracken v. Hayward, 2 How., 608, a law requiring property sold under execution, to produce two-thirds of its appraisement, was declared for the same reason to be inoperative and void. A law of Illinois allowed the City of Quincy to issue and negotiate coupon bonds, but required the city to levy a sufficient special tax to pay the coupons.

A subsequent legislature so restricted the power of taxation, that enough money could not be raised to meet the obligations. The last law was held to be void. Von Hoffman v. City of Quincy, 4 Wal., 550; Gunn v. Barry, 15 Wal., is essentially like the case here presented. The constitution of Georgia very largely increased the amount and value of the property exempted from execution. The court held that the law manifestly impaired the obligation of the contract. In that case the creditor had reduced his debt to a judgment, which was a lien upon the property. The law withdrew from liability a part of the property, upon which the lien had attached, whilst the court remark upon this fact, it is plain that the result would have been the same, had there been no judgment and lien, when the law went into effect. In Walker v. Whitehead, not yet reported, after the contract in suit had been made, the legislature imposed certain taxes upon such choses in action, to be paid annually, and declared as a condition precedent to the right of suit, among other things, " that the said debt has been regularly given in for taxes, and the taxes paid." *Held:* That these conditions impaired the obligation, and were void. Most of the laws which have been condemned and declared invalid, operated upon the final process after judgment was obtained. The Illinois statutes were meant doubtless to prevent a sacrifice of the debtor's property, and only delayed the collection of the debt, if the property fell short of realizing two-thirds of its appraisement, at its first offer for sale. But the creditor had a right to the absolute sale of the mortgaged premises; or of property under execution, when the contract was formed. These subsequent conditions embarrassed his remedy, rendering it substantially less valuable. If such laws may be set aside, what vindication can be made of a statute, which withdraws altogether from liability, twice or thrice as much property, as was exempted when the debt was contracted? The lesson of the adjudications is, that the creditor may trust to the law as it is when he contracts, to know how much of the estate of the debtor he may look to for satis-

faction. The existing law is in the contemplation of both parties. That furnishes approximately a safe basis of credit. If subsequent laws may come in, and deny satisfaction out of half the property before liable, it is too plain for argument or illustration, that such a statute seriously impairs the right.

There is hardly room for doubt that the greatly enlarged exemptions under the act of 1865 come within the range and condemnation of these principles. This will be manifest by comparing the law of 1857 with that of 1865. The former exempted the land and buildings occupied as a residence, not exceeding 160 acres in quantity, and $1,500.00 in value, including the improvements. The latter exempted 240 acres, regardless of value, so laid off as to include the dwelling house and other buildings of the farm. The homestead, as thus defined, would, in all probability, equal half the value of the larger landed estates. Upon a critical examination, it might, perhaps, turn out that half of the landed estates of the freeholders of the State were placed entirely beyond the reach of creditors. It would embrace, both in quantity and value, more than half of the cultivated lands. The effect of the law, in many instances, is to free from debt, property worth $10,000.00 or $20,000.00; to place many debtors, in comparatively affluent circumstances, beyond the reach of the smallest creditor. Credits predicated on the basis of the law of 1857, may be perfectly solvent, and yet, by the act of 1865, rendered insolvent. Such would be the consequences if the statute shall be construed to apply to pre-existing debts.

We would have no doubt or hesitancy in declaring this statute void as to pre-existing debts, because of the inhibition of the constitution, but for the embarrassment caused by the case of Stephenson v. Osborne, 41 Miss. Rep., 130. Mrs. Osborne, as widow, claimed the exempt personal property, under the act of 1865, her husband having died *since* its passage. This claim was contested, upon the ground, as stated, in the answer to her petition; that she had, by a

deed of separation from her husband, renounced all her right and claims upon his estate. It does not appear from the report, that a concession of her demand would have injured the creditors. It was conceded by her counsel in his brief, that the law was unconstitutional as to pre-existing creditors. Her right was predicated in argument, on the fact that the estate was solvent, indebted not exceeding $500.00, and that her husband died *after* the law was in force. The question was not whether the law was void, because it impaired the obligation of contracts; but rather, whether the widow could take the personal property exempt by the statute in force at the death of the husband. It may not have been necessary to decide this question to pass upon the validity of the law as to prior creditors. What was said in argument by the court on the last point, entitled, as it is, to the highest respect and consideration, might be accepted as dicta.

We are strongly inclined to the opinion that the enlarged homestead, as defined in the act of 1865, is prospective, allowable against after-incurred liabilities. By express words, the homestead, under the act of 1857 may be claimed against future debts. The act of 1865 imports, by its title, to be an amendment of the existing laws. That purpose is clearly set forth in the seventh section, " that this act shall be construed as amendatory of the exemption laws of this State, and not intended to repeal the said laws, otherwise than that the amendments shall supersede the former acts so herein revised and amended." The amendments, mainly, are an increase and description of the property, and directions as to preferring the claim, and settling doubts as to the right claimed. The prospective feature of the former law is not repealed by express words. If accomplished at all, it is by implication. Such repeals are not favored nor tolerated, except for inconsistency and repugnance. Courts ought to assume that the legislature have declared how far the repeal shall extend, and will not enlarge it by implication, unless there is plain inconsistency and incompatibility. Moreover,

a statute should be so construed as that it may have effect. It is never to be inferred that the legislature intended to transcend the limits of its power. Statutes should be so interpreted, if the language and subject-matter will admit of it, as to conform to the fundamental law. A rendering which will harmonize with the constitution should be adopted, rather than one which shall be repugnant to it. In Gunn v. Barry, 15 Wallace, the intimation is strong that the law of Georgia, which is much like our statute of 1865, was prospective in its effects. The State court, however, had decided otherwise.

Accepting the decisions of the Supreme Court of the United States as conclusive authority upon constitutional questions, we are constrained to the conclusion that the adjudications of that court condemn the increased exemptions of 1865, so far as prior creditors are affected, as violative of the constitution. It was observed by the court, in Stephenson v. Osborne, 41 Miss., that it had not met with an authority in which the constitutionality of exemption laws was raised and decided. Since that decision, the case reported in 15 Wallace, has been adjudged; and also a very well considered case reported in 22 Grattan, 266.

To dissent from a former judgment pronounced in this court is always attended with serious embarrassment. It should never be done, until mature reflection had engendered the clearest conviction. But in cases like this, we are subordinate to the supreme court of the United States, and must receive the expositions of the constitution from that tribunal as authoritative and binding upon us. As a court, it is our duty to pronounce the law. We can not, however, close our eyes to the consequences of our judgments, as they may affect the business and social interests of the community. We believe with confidence, that the conclusion to which we have come, will promote the public good. The principle vindicated will give stability and uniformity to the business and industries of the people. Individuals, in their dealings and transactions, will be governed in their credits

and liabilities by a surer and more permanent standard. It may serve to check, somewhat, the disposition to risky speculation, and inculcate a sterner morality to respect the inviolability of contracts.

It plainly teaches the lesson of self-reliance, and self-dependence, as a rule of conduct in business, and a better means of extrication out of embarrassments, than periodic appeals to legislative power, to interpose for relief.

We are of the opinion that on the case made in the pleadings, Mrs. Phipps is entitled to a homestead exemption, to be assigned to her, according to the provisions of the Code of 1857, as to quantity and value, and that this assignment may be made in this suit.

The decree of the chancery court sustaining the demurrer and dismissing the bill is reversed. The demurrer is overruled and cause remanded for further proceedings in accordance with this opinion. The defendants may answer in forty days from this date.