MARTHA J. BAILEY AND HUSBAND *v.* W. H. FITZ-GERALD, ADMINISTRATOR.

1. PROBATE COURT. *Guardianship. Decree against a minor unrepresented.*
    Under the Code of 1857, a decree upon the final settlement of a guardian, where the ward, being still a minor and unmarried, was not represented in the proceedings by a guardian *ad litem*, is void as against the ward; and the fact that

he was duly summoned could not give any validity to the decree.  *Burrus* v. *Burrus, ante*, p. 92, approved.

2. THE CIVIL WAR.  *Legislative and judicial authority of the State.  What acts invalid.*

During the civil war, the Legislature of this State had the right to legislate upon all subjects of internal and domestic policy, and the courts could exercise their ordinary and accustomed jurisdiction, except that any law enacted or any judicial act done in contravention of the Federal Constitution, or in aid of the Confederate struggle to subvert the authority of the United States, was null and void.

3. JURISDICTION.  *State Supreme Court.  United States Supreme Court.  Authority of decisions.*

This court will follow the decisions of the Supreme Court of the United States in "all cases to which the jurisdiction of that court extends, under the Federal Constitution," but will maintain, in full measure, its right to declare the rules of law in all cases arising under the Constitution, statutes, and customary laws of this State, where the Constitution, the laws, or the treaties of the United States are not involved, and will adhere to its own convictions and judgments in the latter class of cases, though at variance with the Federal judiciary.

4. EXECUTOR.  *Investment in Confederate bonds.  In aid of the Confederacy.  Federal question.*

Where a guardian, in 1863, in pursuance of an order of the Probate Court, invested his ward's money in bonds of the Confederate States, he may be compelled by the ward to account and settle for the money so invested, notwithstanding the investment was authorized by a statute of this State enacted in August, 1861, and by the order of the Probate Court, and that the guardian, in his final settlement, after the war, when the bonds had become worthless, received credit for the money thus invested, and was discharged from his guardianship by an order of the court.  This court, recognizing the authority of the Supreme Court of the United States upon this subject, and following the decision in *Horn* v. *Lockhart*, 17 Wall. 579, is constrained to declare the statute above referred to, and the judicial acts authorizing the investment in Confederate bonds and discharging the guardian, to be void and of no effect, as being acts of the State, in its legislative and judicial departments, in aid of the Confederate government.  *Trotter* v. *Trotter*, 40 Miss. 704, overruled.

APPEAL from the Chancery Court of Tallahatchie County.

Hon. J. C. GRAY, Chancellor.

In 1859, George G. Harvey was appointed guardian of the person and estate of Martha J. Bradford, a minor.  In 1863, in pursuance of an order of the Probate Court, obtained upon his petition therefor, the guardian invested his ward's money in bonds of the Confederate States.  The order of court was

based upon an act of the Legislature, approved August 2, 1861, as follows : —

"*Be it enacted by the Legislature of the State of Mississippi*, That it is, and shall be, lawful for executors, administrators, guardians, and all other trustees having money or effects which may be invested at interest, to invest the same in the bonds or treasury-notes issued since the ninth day of January, one thousand eight hundred and sixty-one, by authority of this State, or of the Confederate States of America, and for that purpose to subscribe to loans offered by either of the said governments ; and that this act shall take effect from its passage."

In 1865, the guardian filed his final account, and petition to be discharged from the guardianship. The petition alleged that, the slaves of the ward having been emancipated and her Confederate bonds having become worthless, she then had no property which made a continuance of his guardianship necessary. In December, 1865, the court rendered a decree, which, after reciting that the allegation of the petition that the ward had no property being satisfactorily proven, and it appearing that the guardian had in all respects complied with the law, declared that the guardian was thereby discharged from his guardianship. Harvey died in 1866, and W. H. Fitz-Gerald was appointed administrator of his estate. Martha J. Bradford became of age in 1871, and in 1872 was married to Pryor L. Bailey. In 1874, she and her husband filed their bill in chancery against Fitz-Gerald as administrator of Harvey's estate, for the purpose of compelling an account and settlement of Harvey's guardianship of the complainant, Martha J. Bailey, *nee* Bradford. The bill alleged that the ward's money which the guardian invested in Confederate bonds consisted " in par funds of the currency of the United States ;" and it claimed that the order of court authorizing the investment was null and void, because the statute upon which its validity depended was in aid of the Rebellion, and of no effect. It was charged that the decree discharging the guardian was void for several reasons, which are sufficiently indicated in the opinion of the court. The defendant answered, and based his

defence upon the validity of the order of court authorizing his intestate to invest the ward's money in Confederate bonds, and of the decree discharging him from his guardianship. Upon final hearing, the chancellor dismissed the bill. The other material facts of the case are stated in the opinion of the court.

*Harris & George*, for the appellants.

1. The first decree on the guardian's final settlement was void because, the general guardian being interested, there was no guardian *ad litem* appointed to represent the ward, who was a minor. Code 1857, p. 431, art. 32. The second decree was rendered without any notice to the ward, and if a summons was necessary at all, it was required in the new proceeding. *Buchanan* v. *Grimes*, 32 Miss. 82. The requirement of the appointment of a guardian *ad litem* did not dispense with notice to the ward. *Jack* v. *Thompson*, 41 Miss. 49. The minor, being over fourteen years of age, was, by an express provision, subject to the process of the court. Code 1857, p. 459, art. 142.

2. The decree purporting to discharge the guardian is a nullity. It was in furtherance of an act of the Legislature which was in itself absolutely void, as the Supreme Court of the United States has solemnly declared in a similar case, because in aid of the Rebellion, so called. *Horn* v. *Lockhart*, 17 Wall. 570.

3. The case here is in all essential respects like that in 17 Wall., *supra;* and, although that decision was not on an appeal from a State court, the question involved belonged to that class of Federal questions in respect to which the decisions of the Supreme Court of the United States are final and obligatory on all courts. The question of the validity of the statute and order of the court authorizing the investment in Confederate bonds was presented to the chancellor, and his decision upheld their validity, against the Constitution and laws of the United States. In such a case, this court will not drive the parties to the Supreme Court of the United States for redress, but will

feel bound to decide according to the deliberately expressed judgment of that court. "If the record shows that the decision of the State court is in conflict with the Constitution, laws, or treaties of the United States, the Supreme Court of the United States has jurisdiction." *New Orleans* v. *De Annas*, 9 Pet. 234; *Harris* v. *Dennie*, 3 Pet. 292. See also 1 Wheat. 338; 4 Wheat. 311; 1 Pet. 94.

*W. S. Eskridge*, on the same side, filed a brief discussing the questions involved, and citing the following additional authorities : —

1. On the invalidity of the decree rendered in September, 1865, because of the failure to appoint a guardian *ad litem:* *McAlister* v. *Moye*, 1 Geo. 258; *Winston* v. *McLendon*, 43 Miss. 254.

2. On the invalidity of the decree rendered in December, 1865, for the failure to summon the ward : Code 1857, p. 498, art. 64; *Murdy* v. *Calvert*, 40 Miss. 181; *Steen* v. *Steen*, 3 Cush. 513; *Cason* v. *Cason*, 2 Geo. 578, 579; *Dogan* v. *Brown*, 44 Miss. 235.

3. As to the nullity of the statute and judicial order authorizing the investment in Confederate bonds : *White* v. *Texas*, 7 Wall. 700; *Mississippi Central R. Co.* v. *The State*, 46 Miss. 157; *Dogan* v. *Griffin*, 51 Miss. 782; *New Orleans, St. Louis & Chicago R. Co.* v. *The State*, 52 Miss. 877.

*W. P. Harris*, of counsel for the appellants, argued the case orally.

*Golladay & Freeman*, for the appellee.

1. The validity of the legislative act of August 2, 1861, has been expressly adjudicated by the High Court of Errors and Appeals (*Trotter* v. *Trotter*, 40 Miss. 704) ; and the correctness of that adjudication has been subsequently twice recognized. *Williams* v. *Campbell*, 46 Miss. 62; *Coffin* v. *Bramlett*, 42 Miss. 207. The case of *Horn* v. *Lockhart*, 17 Wall. 570, was from a Circuit Court of the United States. We recur to two of many instances where the Supreme Court of this State adheres to its own rulings contrary to the decisions of the

Supreme Court of the United States. *Brien* v. *Williamson*, 7 How. 156; *Shelton* v. *Hamilton*, 23 Miss. 496. Where a guardian has kept within the line of duty, and exercised reasonable care and diligence, he cannot be made responsible for any loss or depreciation in the fund intrusted to him. *Coffin* v. *Bramlett*, 42 Miss. 208. And, as we understand the decisions, they recognize the immunity of a guardian from accountability for money invested in Confederate bonds by order of court. *McFarlane* v. *Randle*, 41 Miss. 411; *Coffin* v. *Bramlett*, 42 Miss. 194; *Williams* v. *Campbell*, 46 Miss. 57; *Rogers* v. *Tullos*, 52 Miss. 685.

2. Conceding, for argument, that the decree rendered in September, 1865, was void because no guardian *ad litem* was appointed, it would follow that the matter of account was still pending in November, 1865, when a guardian *ad litem* was appointed; and when, in December next following, a decree was made allowing the final account, the objection was obviated. The appointment was good as an original appointment, and the use of the words "*nunc pro tunc*" could not vitiate it.

3. We insist that, in Harvey's proceedings for final settlement, it was not necessary that the minor should be served with a summons. But if a summons was required, the return of "executed" on the one issued is sufficient till set aside for error. Code 1857, p. 431, art. 32; *Winston* v. *McLendon*, 43 Miss. 254; *Campbell* v. *Hayes*, 41 Miss. 561; *Harrington* v. *Wofford*, 46 Miss. 41; *Hanks* v. *Neal*, 44 Miss. 212. The proceedings cannot be attacked by an original bill; but if complainants have any remedy, it is by a bill of review or writ of error.

SIMRALL, C. J., delivered the opinion of the court.

The defendant set up the discharge of his intestate from further accounting in the proceedings of final settlement as *res adjudicata*, protecting him against the demand asserted in this suit.

The complainants attempt to obviate the effect of that

order, because Mrs. Bailey, then the ward of the intestate, was not represented by a guardian *ad litem*.

In *Burrus* v. *Burrus*, *ante*, p. 92, the statutes reguating the mode of serving process, and upon whom, in proceedings under the probate jurisdiction of the Chancery Court, was very carefully examined, and the conclusion reached that those statutes unaffected by the Chancery Court law for ordinary equity suits must be exclusively looked to in determining how such process must be served, and upon whom. When minors were interested in and proper parties to such proceedings, the summons must have been directed to and served on their guardian, and where the guardian failed to appear, or was interested, the court must have appointed a guardian *ad litem*. Generally, if not universally, as there pointed out, the infant must be represented, either by his guardian, or the special guardian *ad litem* when the former is absent or interested; and service on the *minor* does not give the court jurisdiction to bind him by the decree, such service not being required by the statute. The infant is made amenable to the jurisdiction by the appointment of the special guardian, who in the suit, for all purposes, represents the infant. For several years prior to that decision that seemed to be the doctrine of the court. *Winston* v. *McLendon*, 43 Miss. 257; *Mullins* v. *Sparks*, 43 Miss. 129; *Saxon* v. *Ames*, 47 Miss. 566.

There was service of summons on the minor ward, in the proceedings for final settlement by the intestate, which terminated in his discharge, at the July term, 1865; but there was no appointment of, or defence by, a guardian *ad litem*. That did not constitute a mere irregularity which would render the decree voidable on appeal; but it was in reality a decree rendered when the ward was not legally before the court as a party. The summons to the ward was unmeaning and unnecessary. The decree was void. The thirty-second section of the Probate Court law (Code 1857, p. 341) declares that on decree shall be *binding*, or *shall* conclude a minor, unless the guardian is a party, if there be one, " and, if there

be no guardian, *or if the guardian be personally interested,* * * * the court shall appoint a guardian *ad litem,* * * * *and its judgment then shall be conclusive on such minor.*" It does not at all help the judgment that the minor has been summoned. If the guardian *is interested,* the judgment shall not " bind or conclude a minor," unless there has been appointed a guardian *ad litem* " to defend for him or her." If that has been done, " the judgment shall then be conclusive on such minor." It is enough to say that the intestate, the general guardian of Mrs. Bailey, then a minor and unmarried, was *interested* in the settlement and discharge which he sought; and, although the ward was summoned, no guardian *ad litem* was appointed, and therefore the statute applies. The judgment does not bind and conclude her.

Art. 148, Code 1857, p. 462, has no adaptation to this case. That article deals with a final settlement with a ward who has attained his majority or married. In either event the powers and duties of the guardian cease. The marriage of a minor ward is, in the sense of this article, an *emancipation,* and capacitates the minor to receive the estate and become a party to the settlement.

But the defendant in error insists that the decree made at the September term, 1865, was cured by what transpired at the November term thereafter. At that term the intestate, Harvey, presented a petition to the Probate Court, suggesting the omission to appoint a guardian in the proceedings for settlement and discharge; and prayed that such appointment should be made *nunc pro tunc,* to examine into his proceedings; and that the court would do what was proper in the premises. On the same day the prayer was granted, and Hugh L. White was appointed guardian " now for then," with instructions " to fully examine the proceedings of said guardian in said guardianship, and report to this court, at its next term, the result of such investigation."

At the December term, White reported that he saw no reason why the guardian should not be discharged; that his pro-

ceedings had been in all things regular, and in compliance with the orders of the court and the law.

Thereupon the court, after reciting the former steps, in view of the fact that there was no longer any estate, and to continue the guardianship would be vexatious, granted the prayer of the original petition, and discharged the guardian.

It is not necessary to determine whether these transactions at the November term are null and void, or whether in reality they did not result in a final settlement. However we might dispose of it, we cannot evade the grave question of whether the intestate could shelter himself under the act of 1861, the petition, the order of the Probate Court, and the investment in Confederate bonds.

The administrator of the guardian affirms that the legality of the investment is vindicated by *Trotter* v. *Trotter*, 40 Miss. 704. The appellants affirm that the Supreme Court of the United States is paramount on that subject, and that that court has pronounced such legislation and judicial action void.

It is the settled doctrine of this court, declared in numerous cases, that the State, during the existence of the late civil war, could rightfully legislate upon all subjects of internal and domestic policy, and that its courts could exercise their ordinary and accustomed jurisdiction. There was no limitation or restriction on the exercise of the powers of the State during that period, within the sphere just named, except that any law passed, or act done by its magistracy, in contravention of the Federal Constitution, and in aid of the Confederate struggle to subvert the authority of the United States, was null and void. The principle has been extended so far as to hold a tax-sale void, in a suit on the title, if any part of the taxes were for military and war purposes. *Dogan* v. *Griffin*, 51 Miss. 783.

The second section of the third article of the Constitution of the United States is : " The judicial power shall extend to *all cases*, in law or equity, arising under the Constitution, the laws of the United States, and the treaties, etc. ; to all cases affecting embassadors and public ministers and consuls ; to all

cases of admiralty and maritime jurisdiction ; to controversies between two or more States, between a State and citizens of another State,—'' * * * continuing the enumeration. It then declares to what the original jurisdiction of the Supreme Court shall extend : '' In all other cases before mentioned the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such regulations as the Congress shall make.''

The appellate jurisdiction extends to the *cases*, rather than the courts in which the suits may be brought. The subject of the suit and the nature of the questions involved must come within the grant of the judicial power in the Constitution, and the '' regulations which Congress may prescribe.'' Its necessity arises out of the sixth article of the Constitution, which declares that '' this Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall.be the supreme law of the land ; and the judges of every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwith-standing.'' Congress has defined the conditions on which the Supreme Court of the United States may exercise appel-late jurisdiction over *cases* originating in the State courts, but involving rights claimed under the Constitution of the United States, the laws of Congress, treaties, etc. The Con-stitution contains grants of power to the Federal government, and limitations upon, or prohibitions of, certain powers to the States. No State shall pass '' any *ex post facto* law, or law impairing the obligation of contracts ; nor make any thing but gold or silver coin a legal tender,'' etc. If, in a suit in a State court, a plea of tender of State bank-notes were offered, the plaintiff would certainly have the right to the protection of the Federal Constitution against a State law which author-ized such tender. *Plainly*, the right which he asserts arises under the Constitution, and he would have a correction by the Federal judiciary if his writ of error come within the regulations

of Congress ; for the State judges, in their official capacity, are bound to give supremacy to the Constitution, although the law of the State may be to the contrary.

So, too, if the defendant in the State court sheltered himself under some State statute which the creditor insisted impaired the obligation of the contract, a constitutional guaranty is appealed to, and the appellate judicial power of the United States would reach that case. It must be invoked in accordance with the regulations which Congress has prescribed. These are contained (for the purposes of this contestation) in the Judiciary Act of 1789, chap. 20, viz., where " a statute of the United States was drawn in question, and the decision of the State court was against its validity ; or the validity of a statute of the State was drawn in question as repugnant to the Constitution of the United States, and the decision was in favor of its validity." If the decision of the highest tribunal of the State is in favor of the validity of a State statute, which statute is alleged to be repugnant to the Federal Constitution, and the statute is sustained, a review on writ of error by the Supreme Court of the United States may be had, if the record shows that such question was fairly presented and decided. This court has been prompt to follow the judicial leadings of the Supreme Court of the United States in " all cases to which the jurisdiction of that court extends, under the Federal Constitution." But at the same time it will maintain the full measure of its right to declare the rules of law on all subjects arising under the Constitution, statutes, and customary laws of the State, in which the Constitution of the United States, statutes passed in pursuance of it, and treaties are not involved, and will adhere to its own convictions and judgments, though at variance with the Federal judiciary. In this domain this court is supreme ; in the other, the Supreme Court of the United States. These were the considerations which prevailed with this court, in *Lessly* v. *Phipps*, 49 Miss. 799, to overrule the judgment in *Stephenson* v. *Osborne*, 41 Miss. —. Since that decision had been announced, the

Supreme Court of the United States had made utterances which clearly pointed to the invalidity of the statute, as being repugnant to the clause of the Federal Constitution denying to the States power to " pass a law impairing the obligation of contracts," which *Stephenson* v. *Osborne* held to be valid. But this court, as announced in the opinion, " was (in that class of cases) subordinate to the Supreme Court of the United States, and must receive the expositions of the Constitution from that tribunal as authoritative and binding." It would have been obstinacy, merely, to have adhered to the former judgment of this court, when that judgment, in effect, had been condemned by the Supreme Court of the United States.

In *Ford* v. *Surget*, 46 Miss. 149, which was an action of tort for cotton destroyed during the war, under a Confederate military order, the court recognized its obligation to decide the questions contested, in " consonance with principles to be deduced from adjudications of the Supreme Court of the United States." That premise was correct, since the jurisdiction of the Supreme Court to review that case on writ of error has lately been sustained.

We find ourselves in the same category, in respect of *Trotter* v. *Trotter*, 40 Miss. 707, that the court was placed in *Lessly* v. *Phipps, supra,* towards *Stephenson* v. *Osborne*. In the former case, the court held an investment in Confederate bonds, under the order of the Probate Court, as allowed by the statute of 1861, to have been rightfully done, and a protection to the administrator. The court proceeded on the idea that the act of 1861 must be respected as valid until the restoration of the authority of the United States, when it ceased to be operative. Since that decision, the Supreme Court of the United States, in *Horn* v. *Lockhart*, 17 Wall. 570, had the precise question before it, under the Alabama statute, and held that such investment of the trust funds contributed to the financial resources of the Confederate government, and was in aid of its cause, and that neither the statute nor the judgment

of the Probate Court could give it any validity. The language of the court was, " that no acts of the Convention, *no judgment of its tribunals*, and no decree of the Confederate government could make such transaction lawful."

The statute which authorized the investment, and the decree of the Probate Court which sanctioned it, were, in the estimation of the court, acts done by the State, in its legislative and judicial departments, in aid of the Confederate cause, and no predicate of right could be founded on them. In the case before us, the guardian petitioned the court for leave to make the investment, and the court directed it to be done. The chancellor so recites the fact to be, in his decree. In *Hanauer* v. *Woodruff*, 15 Wall. 442, the same tribunal had declared a promissory note, given for the purchase of the bonds of the State of Arkansas issued by its convention, for military uses in the late war, to be invalid. The reasoning of the court was, that those who bought these bonds were participants in the unlawful purpose for which they were issued, and gave them credit. The case of *Tharington* v. *Smith*, 8 Wall. 1, was pressed, at the argument, as a precedent in principle and analogy. But the court distinguished the circulation of Confederate notes as a moneyed currency used by millions of people in their daily transactions, and constituting their only " money," from a purchase of bonds issued for war purposes. The former was characterized as an " enforced currency, arising out of paramount authority." It is to be inferred, from the observations of Mr. Justice Miller, that the court had great difficulty in sustaining Confederate money as a consideration for a contract, but felt constrained by the urgent necessity so to hold, and the inconveniences that would arise from a contrary ruling.

We are constrained to follow the decisions of the Supreme Court of the United States in these adjudications.

Decree reversed, and cause remanded for further proceedings.

CHALMERS, J., concurring.

In *Tharington* v. *Smith*, 8 Wall. 1, the Supreme Court of the United States held that a contract based on Confederate treasury-notes was valid.

In *Hanauer* v. *Woodruff*, 15 Wall. 439, they held that a contract based on bonds issued by the State of Arkansas in aid of the Rebellion was invalid.

In *Horn* v. *Lockhart*, 17 Wall. 570, they held that the investment by a guardian of the funds of his ward in Confederate bonds, in pursuance of a statute of the State of Alabama, and in obedience to an order of the Probate Court of the State (a case on all fours with the one at bar), was invalid.

I confess myself unable to draw a distinction between the two last cases and the first one, it not having been shown that the investment in the bonds was with the direct purpose and intention of aiding the insurrectionary government. If it was with no such purpose, but simply as an investment of funds or an exchange of property, wholly disconnected with any intention, wish, or purpose of assisting the Rebellion, the purchase of bonds seems to me to stand on the same footing as the contract for treasury-notes. But the Supreme Court of the United States think otherwise, and we are, in this class of cases, bound by their rulings.

In *Hanauer* v. *Woodruff, supra*, Mr. Justice Miller said that he could see no difference between dealing in the bonds and the notes; that he had given a reluctant assent, in *Tharington* v. *Smith*, to the proposition that a contract for the notes was valid; and, therefore, while he could perceive no difference between the two cases, he was glad to see the one limited and qualified by the other. I am like him in being unable to see the difference, but I am unlike him in thinking that *Tharington* v. *Smith* was wrong. I think the contract there ought to have been upheld, and so I think the transactions in the other two cases should have been also, unless it was shown that there was a direct purpose to aid the Confederate government, in the purchase of the bonds in the one case and the invest-

ment of the ward's money in the other; and there was no pretence of such showing in either case.

I assent, therefore, to the judgment of reversal in this case, solely because the Supreme Court of the United States has twice so ruled, and not because I think it right in itself, or consistent with the decision in *Tharington* v. *Smith*, *supra*.