Hawthorne and Wife *v.* Smith.

# W. A. HAWTHORNE & WIFE, Appellants, *v.* T. G. SMITH, Respondent.

Does the Constitutional provision for protecting " a homestead as provided by law," absolutely protect a homestead of such dimensions and value as the law then in existence or thereafter to be made, might prescribe, or does it only require the Legislature to pass a law protecting a homestead upon such terms and conditions as the law may impose—*Quere?*

It is clearly the intention of the Constitution to protect a debtor's homestead from forced sale. It is equally clear the Legislature intended to effectuate that intention. This being the policy of the law, creditors will not be allowed to defeat its object unless the statute clearly gives that right, or clearly points out the contingency upon the transpiring of which the debtor will lose his exemption.

Property which possesses the characteristics of a homestead may be selected and recorded as such at any time before actual sale under execution. The levy of an attachment will not prevent such selection.

When a Court grants a temporary restraining order, and makes a rule on the defendant to appear at chambers and show cause why a *perpetual* injunction should not be granted, this, although irregular, is not injurious to defendant, if at chambers the injunction is made only to operate until a hearing on the merits.

Where a complaint in the nature of a bill in equity sets out distinctly most of the facts necessary to entitle the plaintiff to the relief sought, but omits one or two material allegations or facts, and these facts are clearly stated and admitted in the answer, the answer may be held to aid the complaint and sustain the action. This was so under the former Chancery practice, and is more especially the case under the liberal rule prescribed by the seventy-first section of the Practice Act.

Appealed from the District Court of the First Judicial District, Hon. S. H. Wright, presiding.

*R. M. Clarke,* for Appellants.

1st. It is the purpose and spirit of the law to exempt from sale on execution the family residence or dwelling actually occupied as such. And it is the actual occupancy coupled with the intention to make it a home that impresses the premises with the character of homestead.

2d. That portion of Section 2, of the Homestead Act of March 6th, 1865, which provides for the selection of the homestead, and prescribes the manner of the selection, is directory merely. (*Goldman* v. *Clark,* 1 Nevada Reports, 611; Act 1861, p. 24, Sec. 1.)

The homestead (if occupied) exists without the declaration of claim.

Furthermore, as no time is prescribed within which the declaration of claim shall be made, (Act 1864–5, p. 225, Sec. 1) and it is manifestly the intention of the law to exempt a homestead from forced sale, the declaration may be made at any time.

3d. The Constitution of Nevada *ex proprio vigore* exempts a homestead from forced sale.   (Const. Art. IV, Sec. 30 ; Const. Debates, 284, 303, 304, 314.)   To impress the character of homestead upon the premises no act is required except occupancy as a family residence ; no " selection " is required, no declaration, acknowledgment, or recordation of claim is required.

It was beyond the power of the Legislature to impose any additional terms, conditions, or requirements upon the Constitution.   If that portion of the Homestead Act of March 6th, 1865, requiring " selection," declaration in writing, acknowledgment and recordation of homestead is not merely directory, then it is unconstitutional, because while the Constitution absolutely and unconditionally exempts a homestead from forced sale, the statute attaches conditions and requires acts to be done to perfect that which the Constitution peremptorily guarantees.

The law divests vested rights.

4th. The decisions of the Supreme Court of California, which held a claim and recordation necessary, are not authority in point; because made under constitutional and statutory provisions entirely different from ours.   (*Cary* v. *Tice*, 6 Cal. 630 ; 13 Cal. 649 ; 24 Cal. 639–640.)

The Constitution of California does not create a homestead. (Const. Cal. Art. XI, Sec. 15.)   The Constitution of Nevada does. (Const. Nev. Sec. 30.)

The laws of California provide that, after June 1st, 1862, " No property shall be deemed a homestead    *    *    *    unless the declaration provided for in this Act shall be made and filed for record, as provided by law."   (Laws Cal. 1862, p. 520, Sec. 6.)

The laws of Nevada contain no such provisions.   (Act 1864–5, pp. 225–6.)

*Geo. A. Nourse,* for Respondent.

The Homestead Law of 1865 superseded the law of 1861, before plaintiff occupied the homestead in question.   He can claim nothing under the law of 1861.

The Constitution *ex proprio vigore* gives no homestead exemption. It merely exempts from forced sale " a homestead, as provided by law."

Had there been no homestead law on the Territorial Statute-book, there would have been no homestead exemption until the law of 1865.   The only homestead exemption now existing is " as provided by " that " law."

That law provides that a homestead shall be exempt, " to be se-lected by the husband and wife, or either of them, or other head of a family, etc."   (Laws of 1865, p. 225.)

The same section further provides that " said selection shall be made by either the husband or wife, or both of them, or other head of a family declaring their intention, in writing, to claim the same as a homestead," etc., etc. ; said declaration to be signed, acknowledged, and recorded.

We claim that until such written declaration is made, signed, acknowledged, and recorded, as provided in that section, there is no exemption.

The homestead exemption is created by, and is based *wholly* upon Statute Law, or constitutional provisions.   Hence the party claim-ing the right or privilege must accept of it, if at all, under just the qualifications and conditions, neither fewer nor different, under which the law gives it.   He must, by his pleading and proof, bring his case within the provisions of the law. *(Helfenstein* v. *Gore,* 3 Iowa 287 ; *Beecher* v. *Baldy,* 7 Mich. 501 ; *Walters* v. *People,* 18 Ill. 194 ; *Kitchell* v. *Burgoine,* 21 Ill. 44.)

When the statute or constitutional provision giving right to such exemption requires those claiming thereunder to take certain steps to obtain the benefit of the exemption, the requirements of the statute must be pursued before the levy. *(Manning* v. *Dove,* 10 Rich. S. C. Law, 395 ; *Frierson* v. *Westburry,* 11 Rich. 353 ; *Helfenstein* v. *Gore,* 3 Iowa, 292 ; *People* v. *Plumsted,* 2 Mich. 469 ; *Frost* v. *Shaw,* 3 Ohio Stat. 273 ; *Clark* v. *Potter,* 15 Gray,

21; *Lawton* v. *Bruce*, 39 Maine, 484; *Pinkerton* v. *Tumlin*, 22 Geo. 165; *Herschfeldt* v. *George*, 6 Mich. 456.)

And the wife and children are in such cases affected by the failure or default of the head of the family to do what the statute requires. (*Davenport* v. *Alston*, 14 Georgia, 271; *Crow* v. *Whitworth*, 20 Geo. 38; *Tadlock* v. *Eckles*, 20 Texas 782; *Brewer* v. *Wall*, 23 Ib. 589; *Getzler* v. *Saroni*, 18 Ill. 518; *Simpson* v. *Simpson*, 30 Ala. 225.)

When such is the requirement of the statute, there must be not only ownership and occupation, but a *selection* of the premises as a homestead. (*People* v. *Plumsted*, 2 Mich. 469; *Beecher* v. *Baldy*, 7 *Ib.* 503–5.) Same doctrine by implication held in *Cook* v. *McChristian*, 4 Cal. 23–6; *Reynolds* v. *Pixley*, 6 Cal. 165.

The pleadings are defective, and do not show facts to justify an injunction.

The rule is to show cause why a *perpetual* injunction should not be granted. This is manifestly wrong. The statute provides for: 1st, a restraining order; 2d, a temporary injunction (to be granted in a proper case at chambers); 3d, a *perpetual* injunction after trial on the merits.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

In the month of March, 1866, appellants moved into a house which, with the land attached thereto, is now the subject of litigation. In September of the same year one Robert Woodburn brought suit against W. A. Hawthorne, and at the time of bringing suit sued out a writ of attachment and had it levied on this house and grounds. In December of the same year judgment was rendered in favor of plaintiff, and in the early part of the year 1867 execution was issued and the property previously levied on under the attachment was advertised for sale. In October, 1866, (after the attachment levied, but before judgment) the appellants filed a declaration of homestead on the property now in dispute. When the Sheriff advertised the property for sale the appellants filed their bill praying an injunction to restrain the sale, and claiming that the property was exempt under the Constitution and Homestead Act. The District Judge issued a temporary restraining order, and re-

13

quired the defendant, Smith, who is Sheriff of Ormsby County, to show cause at a certain day why a perpetual injunction should not be granted.   At the hearing of this rule the Judge refused to grant an injunction, and discharged the restraining order.   From this ruling in regard to an injunction the plaintiffs appeal.

It is admitted by respondent that the property claimed is in every respect such as might have been claimed as a homestead if the declaration of intention to so claim it had been filed in time.   The question to be determined by us is, whether the levy of an attachment gave the attaching creditor such a vested interest in the property as to deprive the appellants of the right to claim it as a homestead.   The thirtieth section of Article IV of the Constitution provides :

" A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists ; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon ; *provided*, the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife ; and laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situated."

At the first session of the Legislature held after the adoption of the Constitution a Homestead Act was passed.   The first and second sections of that Act, which are the only ones throwing any light on this subject, are as follows :

" The homestead, consisting of a quantity of land, together with the dwelling house thereon and its appurtenances, not exceeding in value the sum of five thousand dollars, to be selected by the husband and wife, or either of them, or other head of a family, shall not be subject to forced sale on execution, or any final process from any Court, for any debt or liability contracted or incurred after November 13th, in the year of our Lord one thousand eight hundred and sixty-one.   Said selection shall be made by either the husband or wife, or both of them, or other head of a family, declaring their intention in writing to claim the same as a homestead.

Said declaration shall state that they, or either of them, are married, or if not married, that he or she is the head of a family; that they or either of them, as the case may be, are at the time of making such declaration residing with their family, or with the persons under their care and maintenance on the premises, particularly describing said premises, and that it is their intention to use and claim the same as a homestead; which declaration shall be signed by the party making the same, and acknowledged and recorded as conveyances affecting real estate are required to be acknowledged and recorded; and from and after the filing for record of said declaration, the husband and wife shall be deemed to hold said homestead as joint tenants."

" Such exemption shall not extend to any mechanic's, laborer's or vendor's lien, lawfully obtained; but no mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property, shall be valid for any purpose whatsoever; *provided*, that a mortgage or alienation to secure the purchase money, or pay the purchase money, shall be valid if the signature of the wife be obtained to the same, and acknowledged by her separately and apart from her husband; nor shall said homestead property be deemed to be abandoned without a declaration thereof in writing, signed and acknowledged by both the husband and wife, or other head of a family, and recorded in the same office, and in the same manner as the declaration of claim to the same is required to be recorded, and the acknowledgment of the wife to such declaration of abandonment shall be taken separately and apart from her husband; *provided*, that if the wife be not a resident of this State, her signature and the acknowledgment thereof shall not be necessary to the validity of any mortgage or alienation of said homestead before it becomes the homestead of the debtor."

The first point of discussion which arises in this case is as to what interpretation should be given to the phrase " a homestead as provided by law," which is found in the first line of the constitutional provision. The appellants contend that " as provided by law" merely means of such size and value as the law may prescribe. That, as there was already a Territorial law in existence which exempted a homestead to the value of five thousand dollars, no legis-

lation was necessary to carry the constitutional provision into effect; that no Legislature could impose restrictions or terms upon which the exemption from forced sale was to depend; that the existence of a homestead depended on occupancy and use of a house and premises as a permanent residence; that when the existence of a homestead was once established, it became sacred under the Constitution, and the Legislature could make no law subjecting it to forced sale, however the parties occupying it might fail to comply with any law requiring a selection and recordation thereof; that the only control the Legislature has on this subject is to increase or diminish the extent and value of the homestead. On the other hand, the respondent contends that this constitutional provision only requires the Legislature to exempt the homestead from forced sale, and in effect authorizes the Legislature to make the exemption on such terms and conditions as they choose to impose.

It is difficult to determine which of these interpretations should be adopted. In this case it is perhaps not necessary to determine this question. Even taking the respondent's interpretation, it is evident the Constitution intended that at all times the homestead of a family should be exempt from forced sale, except in a few enumerated cases. It is equally evident the Legislature intended to carry out this policy of exempting the homestead. If, then, it is the policy of the law to exempt the homestead of insolvent debtors from forced sale, certainly we should not hold that a creditor can defeat that policy by any act of his, unless the statute clearly gives that right, or clearly points out the contingency, upon the happening of which the debtor should lose the benefit of the exemption. Here the property was clearly a *homestead in fact.* If it lacked anything of being such a homestead as the law exempts, it was only the execution and filing for record of a declaration by the husband and wife, or either of them, that they had selected it as such. Upon the filing of such declaration the statute says it shall be exempt. It is hardly claimed by respondent that the existence of debts, or the actual insolvency of appellants at the time of filing, would have affected their right to select the homestead and claim the exemption. If, then, the prior insolvency of a party will not prevent his claiming the exemption, we see no reason why an attach-

ment should. The law declares property thus selected shall be exempt from execution. It makes no exceptions. It is no greater hardship to exempt it from an attaching creditor than any other creditor. The object of the attachment law is not to allow the creditor to seize property which is exempt from execution, but to secure that which is liable to such process. As the law is totally silent as to the time when a selection shall be made of the homestead, declares no penalty for failing to select, makes no reservation in favor of liens acquired before selection, but simply says that when selected it shall be exempt from forced sale, we are forced to the conclusion that, after the selection is made and filed for record, no levy upon, or sale of the homestead property, can be legally made, except for those classes of debts mentioned in the Constitution.

The point that the Judge, after granting the restraining order, directs the defendant to show cause why a *perpetual* injunction should not be granted, instead of making an order to show cause why an *injunction* should not be granted, is rather technical. Undoubtedly the proper practice is: first, a restraining order; second, on hearing defendant at chambers, an injunction; thirdly, a perpetual injunction on the final hearing. But a mere mistake in the wording of the restraining order is no ground for refusing the proper relief on the hearing.

Respondent contends that the Court below was right in refusing the injunction, because the complaint was defective in not stating that the plaintiffs had selected the property in controversy as a homestead, and caused the declaration of their selection to be recorded as required by law. In this respect the complaint is undoubtedly defective; and if that defect had not been cured by the answer, we would have been compelled to hold that the Court below was correct in refusing to grant an injunction on so defective a complaint. In this case the plaintiffs state distinctly all the facts necessary to entitle them to the relief sought, except the selection and recordation of the homestead claim. This fact they fail to state. Nor do they state any fact from which the Court could infer that the recordation of a claim had been made before levy of execution.

But the defendant states distinctly the date when the plaintiffs

filed their declaration of homestead for recordation.   The question then is, does this statement in the answer cure the defect in the complaint ?   It is said that a complainant in a bill in equity must make out a case by his own bill, or he is not entitled to relief, although the answer may set out enough facts, when added to those things alleged in the bill, to entitle the complainant to relief.

This may be the correct general rule, but still the rule is not carried out in all its strictness.   Both English and American Courts have frequently allowed the answer to aid the bill, so as to grant relief that they could not have granted if there had been no answer at all.

In a note to Daniels' Chancery Practice, page 411, the editor uses this language :   " But when the facts stated in the bill are disproved, or are defectively stated, relief may be granted upon the facts stated in the answer."

For this rule a reference is made to two Tennessee and two Kentucky cases.   The Kentucky cases seem to sustain the text.   The Tennessee cases we have not.   In the case of *Rogers* v. *Soutten*, 2 Ken. 598 ; 15 Eng. Ch. R., the Court granted relief on a case made by the answer quite different from the one made in the bill. We conclude that Courts of Equity, under the old practice, would sometimes allow the answer to aid a defective bill.   The seventy-first section of our Practice Act provides as follows :

" Section 71.   The Court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the parties ; and no judgment shall be reversed or affected by reason of such error or defect."

It is impossible to suppose the defendant could have been taken by surprise by the Court acting on a fact so distinctly stated in the answer.   Nor, under the very liberal direction of our statute, do we think that there would have been any impropriety in the Court below acting on the facts as they are made to appear by the pleadings, allowing the answer to come in aid of the complaint.

The judgment of the Court below must be reversed.   That Court will grant an injunction pending this action, and take such further steps as the equity of the case may require.

JOHNSON, J., having been counsel in the Court below, did not participate in this decision.

---

RESPONSE TO PETITION FOR REHEARING.

Opinion by LEWIS J., BEATTY, C. J., concurring.

The first point made by counsel for respondent in his petition for rehearing is, that this Court erred in holding that the allegations of the defendant's answer cured the defect in the bill, and several cases are referred to as announcing a different rule.  But of those cases cited by counsel which we have been able to examine, not one of them sustains the position assumed by him.

In *James* v. *McKernon,* 6 John. 543, it was simply held that " the Court could not afford relief not sought for by the bill, nor entertain the question of fraud, which was not so much as suggested by the pleadings."

Surely, at this day, no precedent is required to maintain a rule so thoroughly settled and so strongly recommended by the soundest and clearest principles of general utility.  The Chancellor in that case set aside, upon the ground of fraud, a certain agreement or deed upon which the defendants based their defense, although relief was not sought upon that ground, nor was fraud alleged in the pleadings.  As the plaintiffs in their bill did not attempt to attack the validity of the deed upon the ground of fraud, nothing is clearer than that they could not prove fraud or recover upon that ground.  And the reason is clearly given by Chancellor Kent in delivering the opinion of the Court.

". The good sense of pleading," says the Chancellor, " and the language of the books, both require that every material allegation of this kind should be put in issue by the pleadings, *so that the parties may be duly apprized of the essential inquiry, and may be enabled to collect testimony and frame interrogatories, in order to meet the question.*  Without the observance of this rule, the use of the pleading becomes lost, and parties may be taken at the hearing by surprise."  We do not find a solitary expression in that case which is in conflict with the rule as announced by this Court in its

original opinion.   The question whether a direct statement in an answer would cure a defective allegation in the bill, was not so much as mentioned in the case.   The question in *Crockett* v. *Lee* 7 Wharton, 522, is precisely the same as that passed upon in *James* v. *McKernon.*   The point before the Court is clearly shown by the following statement made by the learned Chief Justice who delivered the opinion of the Court:

" The testimony which has been taken in these causes certainly is very strong in support of the decrees of the Circuit Court; but the counsel for the appellant contends that so much of this testimony as respects the vagueness of Cameron's location must be disregarded, because neither its vagueness nor its certainty has been put in issue.   Lee has not averred in his bill nor alleged in his answer that this location is vague ; nor has he anywhere or in any manner questioned its validity."

So the Court held that relief could not be granted upon evidence making out a case different from that presented by the pleadings. Because, says the Court: " If the pleadings in the cause were to give no notice to the parties or to the Court of the material facts on which the rights asserted were to depend, no notice of the points to which the testimony was to be directed, and to which it was to be limited—if a new case might be made out in proof differing from that stated in the pleadings—all will perceive the confusion and uncertainty which would attend legal proceedings, and the injustice which must frequently take place.   The rule that the decree must conform to the allegations as well as to the proof of the parties is not only one which justice requires, but one which necessity imposes upon Courts."

Attention is also called to a doctrine of Mr. Justice McLean in the case of *Jackson* v. *Ashton*, 11 Peters, 229, where it is said: " That no admissions in an answer can under any circumstances lay the foundation for relief under any specific head of equity, unless it be substantially set forth in the bill."

As we interpret this language, it certainly does not conflict with the rule which was answered by this Court in its first opinion.   The opinion evidently intended to be conveyed by Mr. Justice McLean was, that the admissions of an answer are not admissible to make

out a case for the plaintiff different from that which he has attempted to make out by his bill, or to afford him relief upon grounds different from those upon which he sought it in his complaint. And such is doubtless the correct rule of law. But we can find no case where it has been held that a direct allegation or admission in an answer, of some one fact which was omitted from a complaint, otherwise complete, and clearly showing the relief sought, would not cure such defective complaint. On the contrary, the case of *Rogers* v. *Sauton*, referred to in the first opinion, and which was a suit in chancery, fully supports the rule as we have announced it, and Mr. Chitty states the rule at law in the following manner :

" If, however, the adverse pleading expressly admit the fact which ought to have been stated in the defective pleading, and which is substantially incorrect in omitting it, the error becomes, it seems, immaterial." (1 Chitty on Pleading, 672.)

No hardship or injury can possibly result from such a rule.

The principal object of pleading is to succinctly and intelligibly present the facts upon which relief is sought to the Court, and to notify the respective parties of the character of case which they will have to meet. The complaint, in this case, clearly notifies the defendant of the character of the plaintiff's case ; and although it is not completely made out by reason of an omission to allege a fact material, and upon which the right of recovery depended, yet his case is perfected by an admission in the answer of the omitted fact. Thus, the plaintiff's case is fully presented to the Court by the pleadings. If, under such circumstances, the relief awarded to the plaintiff be in conformity with that sought by him, and it is justified by proof legitimately admitted under the pleadings, the defendant cannot complain that he was injured by the defect in the complaint. Upon this point, therefore, we are satisfied that the correct rule was announced in the original opinion.

We see nothing in the other point made by counsel for respondent. True, the rule made by the Court was to show cause why a perpetual injunction should not issue ; but clearly the respondent could not be misled by what seems a mere clerical misprision. And indeed, the record shows that he was not ; for it appears, the question argued upon the hearing was, whether a temporary injunc-

tion ought to issue; and the appeal is from the order refusing temporary and not a final injunction.

Rehearing denied.