[No. 774.]

## ESTATE OF DAVID WALLEY, DECEASED. IN THE MATTER OF THE APPLICATION OF HARRIET J. WALLEY, ADMINISTRATRIX, TO HAVE A HOMESTEAD SET APART TO HER.

HOMESTEAD—SECTION 123 OF THE PROBATE ACT CONSTRUED.—The expression in section 123, "may set apart for the use of the family of the deceased," must be considered as imperative and mandatory as if it had read, *shall* set apart.

IDEM—SECTION 126 CONSTRUED.—By section 126, the legislature intended to embrace within the meaning of the words "family of the deceased," a childless widow.

REPEAL OF STATUTES BY IMPLICATION—HOMESTEAD ACT OF 1865. — Repeals by implication are not favored, and are only held to have occurred in cases of irreconcilable repugnancy between the later and former enactments, where the two cannot stand together, and there is no such repugnancy between the probate act and the homestead act.

HOMESTEAD UNDER HOMESTEAD ACT. — Under the homestead act, the homestead is exempted from liability for the debts of the owner, so long, at least, as he continues to be the head of the family, no matter whether the debts were contracted before or after the family relation commenced, or before or after the homestead was dedicated.

IDEM—PROBATE ACT.—Under the probate act the homestead is exempted in favor of the widow or minor child or children of a deceased person, from the payment of the general debts contracted by him in his lifetime, and from debts accruing in the course of administration.

IDEM.—To claim the homestead under the homestead law, the widow would have to show that she was the head of a family.

ABANDONMENT OF HOMESTEAD.—The only effect of a written abandonment of the homestead was to invest the husband with the power to alienate the premises or subject them to some specific lien during the continuance of the abandonment.

APPEAL from the District Court of the Second Judicial District, Douglas County.

The facts are stated in the opinion.

*D. W. Virgin,* for Appellant.

I. The acts of Walley and wife were sufficient under the existing law concerning homesteads and the state constitution subsequently adopted, to stamp the character of homestead upon said premises and to indicate their selection and dedication thereof as a homestead, and long before the

homestead law of 1864–5 was enacted Walley and his wife had a vested homestead right in said premises. (Const., Art. IV, sec. 30; *Goldman* v. *Clark*, 1 Nev. 607; *Clark* v. *Shannon*, 1 Id. 568; Act 1861, p. 24; Const. Debates, 284, 303, 304, 314.)

II. The abandonment of homestead of Walley and his wife made in December, 1872, was, in effect, a declaration on their part that up to that time they had claimed said property as their homestead; and if said abandonment, though general in its terms, only operated as a special and limited one, removing the homestead exemption only as to the particular creditor, the mortgagee, then it was a sufficient declaration of intention on their part to continue to hold and claim the same as their homestead as to all the world except the creditor in whose favor said abandonment was made.

III. Admitting for the purpose of argument, that it was necessary for Walley or his wife to make a declaration of homestead upon said property in order to hold it as such, then under the decision of this court in *Hawthorne and Wife* v. *Smith*, (3 Nev. 185), the declaration could be made at any time before sale. Why then may not the widow make it? She could have made it during her husband's lifetime, surely the law did not intend *her right* to die with her husband; did not intend that the very calamity a homestead was intended to provide against should be the destruction of the homestead; for, although the surviving wife is no longer a married woman, yet she is the family of the deceased and all the family he left, or ever had beside himself, therefore she is the *head* of the family, and as such retains her right at any time to claim a homestead, and when she filed her petition to the district judge she did claim a homestead. (Probate Act, Vol. 1, Comp. L. pp. 158–9, secs. 602 to 607, both inclusive.)

IV. If there was no exempt homestead until a declaration was made by Walley or his wife, then there was no homestead right to abandon in December, 1872, and the abandonment then executed by Walley and his wife was ineffectual for any purpose unless as an estoppel to prevent

Walley and his wife, or either of them, from setting up their homestead as against the mortgagee.

*R. M. Clarke,* for Respondent.

I. No person who is not married or who is not the head of a family is entitled to a homestead. (Const., Art. IV, sec. 30, Comp. Laws, secs. 186, 687; 14 Cal. 477; 31 Cal. 526–34.)

By the Court, BEATTY, J.:

This is an appeal from an order denying the petition of appellant to have a homestead set apart for her use and declared not subject to administration. The material facts disclosed by the statement on appeal are as follows: Petitioner and deceased were married prior to the year 1863. During that year they commenced residing on the premises now claimed as a homestead, and resided there continuously until the death of the husband in 1875. No declaration of homestead was ever made or filed by them, or either of them, although all the facts existed which would have entitled either of them to do so at any time subsequent to the passage of the homestead act of March 6, 1865, and prior to the death of the husband.

In December, 1872, being desirous of raising money on a mortgage of the premises, the petitioner and her husband made and filed a formal and general abandonment of all claim of homestead therein, such declaration being considered by the mortgagee necessary for his security. Notwithstanding this declaration, however, petitioner and her husband continued, as above stated, to reside on the premises, making them their actual home. The petitioner has never had any children, and has not now any relative residing with or dependent upon her, and the sole question to be decided is, whether, under these circumstances, she is entitled to have the homestead set apart for her use, exempt from the claims of the general creditors of the estate.

Section 123 of the act to regulate the settlement of the estates of deceased persons reads as follows: "Upon the return of the inventory, or at any subsequent time during the administration, the court or the probate judge may, of

his own motion, or on application, set apart, for the use of
the family of the deceased, all personal property which is
by law exempt from execution, and the homestead as desig-
nated by the general homestead law, or by section 126 of
this act."

The first clause of section 126 reads as follows: "If
there is no law in force exempting property from execution,
the following shall be set apart for the use of *the widow or
minor child or children, and shall not be subject to administra-
tion.*" It then proceeds to enumerate the articles to be
exempted, and among the rest the homestead, to consist of
the dwelling and a limited amount of land, not exceeding
five thousand dollars in value.

These two sections, construed together, and considered
without reference to other provisions of the statutes and
constitution, seem to have a very clear meaning. In the
first place, the expression in section 123, "may set apart
for the use of the family of the deceased," must, on a
familiar principle of construction, be considered as impera-
tive and mandatory as if it had read "*shall* set apart," etc.;
and in the next place it is clear, from the language of sec-
tion 126, that the legislature intended to embrace within
the meaning of the words "family of the deceased" a child-
less widow. The property is to be set apart for the use of
"the widow *or* minor child or children." The effect of
these provisions is therefore the same as if the wording of
the statute had been as follows: The probate court or judge
shall set apart for the use of the widow of any deceased
person all spinning-wheels, books, etc., and the homestead.
And unless they have been repealed, or superseded, or
qualified by some provision of the constitution or subse-
quent statutes, the appellant is clearly entitled to the relief
which she prays for.

It is not contended that any provision of the constitution
affects the operation of this part of the probate act; but it
seems to have been considered by the district judge that
the homestead act of 1865 was exclusively applicable to the
case, on the principle, no doubt, that being a later enact-
ment relating to the same subject, it repealed the former by

implication. This view, if we are correct in attributing it to the district judge, was, we think, a mistake. Repeals by implication are not favored, and are only held to have occurred in cases of irreconcilable repugnancy between the later and the former enactment, when the two cannot stand together, (*Thorpe* v. *Schooling*, 7 Nevada, 17) and there is no such repugnancy between these two acts. Each may stand and have its full operation without coming in conflict with any provision of the other. They are entirely independent, and, in fact, contemplate different objects. Each is intended to exempt the homestead from certain liabilities; but the one, the homestead act, exempts it from liability for the debts of the owner, so long, at least, as he continues to be the head of the family, no matter at what time, after November 13, 1861, the debts may have been contracted— whether before or after the family relation commenced, or before or after the homestead was dedicated. The other, the probate act, has a more limited, but at the same time, an independent operation. It merely exempts the homestead in favor of the widow or minor child or children of a deceased person, from the payment of the general debts contracted by him in his lifetime, and from debts accruing in the course of administration. A homestead, set apart under the probate act, simply becomes not subject to administration, that is, not subject to the claims of general creditors of the estate, but it remains subject, in the hands of the widow, to the payment of her debts, whether contracted before or after it was so set apart. To make it a homestead, within the meaning of the homestead act, so as to be exempt from the payment of her debts, as well as those of her deceased husband, she would have to claim it under the homestead law; and, in order to do that, she would be obliged to show that she was the head of the family, which the appellant in this case has not done. It does not follow, however, that because she cannot avail herself of the privileges of the homestead act and secure a homestead that will be exempt from liability for her own debts, that she must therefore be denied the benefit of an act which was designed to secure to a widow, whether childless

or not, a homestead exempt from liability for the debts of her deceased husband. It would indeed be a strange anomaly in our laws if they really bore this construction: that a man and his wife, or either of them, may, at any time before his death, exempt their homestead from all liability for the debts of either, whether contracted before or after the declaration of homestead; but that, if the husband dies before such declaration is made, his widow, if she happens to be childless, must be turned out of doors in order to pay the expenses of administration—that the very bereavement that makes the exemption of a homestead more necessary, utterly deprives her of the right. In this case, there can be no doubt that at any time before the death of David Walley, he or his wife, either, might have secured this homestead from liability for his debts by filing the declaration provided for in the homestead act. Since his death, she has lost the right to proceed under that act, because she is " unmarried" and is not the " head of a family," and if her rights were not otherwise secured, it might follow that her husband's creditors could take from her what they could not have taken from him in his lifetime. But her rights are otherwise secured. They are secured by the provisions of the probate act above quoted, which have never been repealed by implication or otherwise.

It is in section four of the homestead act (C. L. 189), if in any, that the repugnant matter is to be found. That section is an enlargement and adaptation of section 9 of the homestead act of 1861, of which the whole act is simply a re-enactment with some trifling alterations, and the addition of provisions for recording homesteads and declarations of abandonment, made, no doubt, for the purpose of carrying out the apparent purpose of the framers of the constitution to make registration of the homestead a condition precedent to its exemption, and to the disability of the owner to alienate or incumber it. It is true that the terms in which the law was enacted defeated the intention of its framers (*Hawthorne* v. *Smith*, 3 Nev. 182;) but still it is apparent that it was passed with no other object than the one supposed, and, least of all, with the object of taking away

the existing rights of widows and minor children. Section 4 of the act is as follows: "The homestead and other property exempt from forced sales shall, upon the death of either husband or wife, be set apart by the court for the benefit of the surviving husband or wife, and his or her legitimate children; and in the event of there being no survivor or legitimate children, then the property shall be subject to the payment of their debts; *provided,* that the exemption provided for in this act shall not extend to unmarried persons, except when they have the care and maintenance of minor brothers or sisters, or both, or brothers' or sisters' minor children, or a father or mother, or both, or grandparents or unmarried sisters living in the house with them." This section, down to the *proviso,* is not only consistent with the provisions of the probate act upon which the appellant relies, but enlarges their operation. It enables the probate court to do for a childless widower what the probate act only authorizes to be done for a widow. It protects the homestead in his hands against her debts as the former act protected it in her hands against his debts. If it does not mean this it means nothing. The *proviso* does not conflict with this construction. It seems to have been added, like most *provisos,* out of abundant caution. Apparently, it was feared that without the qualification contained in the *proviso* the section might be construed to mean that a surviving husband or wife, though childless and without dependent relatives, would take the homestead, and hold it, not only exempt from claims against the deceased, but also from the debts of the survivor, which is the "exemption provided for in this act," and which, therefore, is the only exemption excluded by the *proviso.* The other exemption in favor of the survivor against the debts of the deceased is not excluded by it, and this is the only exemption which the appellant claims.

Another point remaining to be noticed is the effect of the declaration of abandonment of homestead made by the appellant and her deceased husband. As to this point it is to be observed that the law does not make the filing of a declaration of abandonment of a homestead constitute in itself

an abandonment.    There can be no abandonment without the filing of such a declaration, but it does not necessarily follow that an abandonment takes place whenever such a declaration is filed.    It may be that it is also necessary for the parties to cease to reside on the premises.    But in the view we entertain of the case, it will not be necessary to decide this question.    Supposing there was an abandonment, the only effect of it was to invest the husband with the power to alienate the premises or subject them to some specific lien during the continuance of the abandonment. There was nothing to prevent the parties from again declaring a claim of homestead in the same premises, the effect of which would have been to exempt them from liability for any debt contracted subsequent to Nov. 13, 1861, and not secured by specific lien.    (Com. L. 186; *Hawthorne* v. *Smith*, supra.)   Still less was there anything to prevent the district judge from setting apart the actual homestead for the use of the widow.    "The homestead as designated by the general homestead law," which he is commanded to set apart for her use, is not a homestead that has already been secured by that law, but a homestead of the character and value prescribed by that law.

For these reasons the order of the district court must be reversed, and the cause remanded for further proceedings to be had in accordance with the views herein expressed. The homestead claimed by the appellant in this case being appraised at more than five thousand dollars, and being subject to the payment of the mortgage of Virgin, may have to be sold, but in case of a sale the right of the widow to five thousand dollars of the proceeds, if that much remains after payment of the mortgage and expenses of foreclosure, must be secured.    All of which is so ordered.   .

HAWLEY, C. J., concurring: '

·  I concur in the opinion of the court, that it was the duty of the district judge, under the provisions of the statutes cited to set apart the property for the use of the petitioner; but I have doubts whether the property, when so set apart, would be subject to the payment of her debts; and as this

question is not, in my judgment, necessarily involved in the decision of this case, I do not express any opinion in regard to it.