## R. A. GAGE ET AL. v. R. S. NEBLETT.

(Case No. 4660.)

1. JUDGMENT LIEN — HOMESTEAD. — A judgment lien takes precedence of a subsequently acquired homestead right.
2. CASE APPROVED. — Railroad Co. v. Winter, 44 Tex., 597, approved.

APPEAL from Navarro. Tried below before the Hon. L. D. Bradley.

*H. A. Halbert* and *Simkins & Simkins*, for appellants.

*R. S. Neblett* and *Lee & Damon*, for appellee.

BONNER, ASSOCIATE JUSTICE. — The controlling question in this case is, which is superior, a judgment lien on land, or a subsequently acquired homestead right?

In the case of Baird v. Trice, 51 Tex., 555, it was decided that an attachment lien on land will not be defeated by a subsequently acquired homestead right. The doctrine of that case has since been affirmed by this court, is sustained by numerous authorities elsewhere, and is, we think, founded on justice and sound principle.

In Bullene v. Hiatt, the supreme court of Kansas say: "The attachment lien existed nearly three months before the homestead right was created. And while homestead laws are everywhere to be considered favorably, yet they are not to be so construed so as to destroy pre-existing rights. . . . An attachment lien, like other liens, though not an *estate* in the land (Chick v. Willets, 2 Kan., 391), is such vested interest therein that it cannot be affected by any subsequent act of the debtor." 12 Kan., 101.

That a judgment lien creates such vested right as will be protected by section 10, article 1, constitution of the United States, which prohibits a state from passing any law which impairs the obligation of a contract, has been expressly decided by the supreme court of the United States, the decisions of which august tribunal upon questions of this character are of peculiarly binding authority upon the state courts. Gunn v. Barry, 15 Wall., 610; Edwards v. Kearzey, 6 Otto, 607.

In Railroad Co. v. Winter, 44 Tex., 597, it was held that a change of designation of homestead by moving the houses or by changing the boundaries of it, substantially different from the locality which the pre-existing facts of ostensible use and enjoyment have fixed as a homestead, cannot be made to the injury or destruction of rights of judgment lien-holders, or of purchasers from the husband with-

out the wife being joined, and existing before such attempted change.

In that case, Roberts, Chief Justice, delivering the opinion of the court, says that "if the judgment lien was acquired on said tract — the Palmer survey — when it was no part of the homestead, the defendant could not change the homestead so as to cover any part of it necessary for the satisfaction of the judgment." . . . 44 Tex., 615.

The difference between that case and the present is, that, in the former, it was sought to change the boundaries of an already *existing homestead;* here it is sought to acquire a *new homestead,* both to the prejudice of pre-existing judgment liens. There is no difference in principle.

We might very well rest this case upon that decision, but will briefly advert to some of the many authorities by which it is sustained; some based upon the proper construction of constitutional provisions, others of statutes.

In Gunn *v.* Barry, 15 Wall., 610, the question arose under a provision of the new constitution of the state of Georgia, which extended the homestead exemption so that it destroyed a judgment lien which a creditor had under previously existing laws. It was unanimously held that this was contrary to section 10, article 1, of the constitution of the United States, and hence null and void.

The learned judge delivering the opinion of the court, speaking of the constitution of Georgia, says: "It withdraws the land from the lien of the judgment, and thus destroys a vested right of property which the creditor had acquired in the pursuit of the remedy to which he was entitled by the law as it stood when the judgment was recovered. It is, in effect, taking one person's property and giving it to another without compensation. This is contrary to reason and justice, and to the fundamental principles of the social compact." 15 Wall., 622; citing Calder *v.* Bull, 3 Dall., 388.

The homestead claim there rested, not as in this case upon the mere voluntary act of the debtor, nor upon an act of the legislature, but upon a constitutional provision, passed by the people of the state in solemn convention assembled.

The later case of Edwards *v.* Kearzey, decided by the same high authority, is very similar to that of Gunn *v.* Barry, *supra,* and to which it refers. It arose under the constitution of North Carolina and certain acts of the legislature to carry the same into effect. By that constitution, the exemption of $500 worth of property, in force when the debts were created, was extended so as to include prop-

erty to the value of $1,000. The indebtedness in that case, though created before the adoption of the constitution, was not reduced to judgment until after the date of the legislative enactment to carry the same into effect. Two of the three judgments were docketed to create judgment liens on the property claimed to be exempt. It was decided that this constitutional and statutory extension of the amount of exempt property was to this prior existing indebtedness null and void under the provision of the constitution of the United States above cited. In the opinion it is said that "The remedy subsisting in a state when or where a contract is made and is to be performed, is a part of its obligation, and any subsequent law of the state, which so affects that remedy as substantially to impair and lessen the value of the contract, is forbidden by the constitution, and is therefore void." 6 Otto, 607.

To the same effect are what is known as the "Homestead Cases," which arose under the construction of the constitution of the state of Virginia, in an elaborate opinion in 22 Grattan, 266; Kibley v. Jones, 7 Bush (Ky.), 243; Lessley v. Phipps, 49 Miss., 790.

The supreme court of Nebraska, in Bowker v. Collins, where the very question here under consideration was decided, say: "It is clearly shown that the lien of the judgment had attached to the lands in question at the time Collins entered thereon for the purpose of claiming the same as a homestead; does the right of homestead attach in such a case so as to defeat the lien of the judgment? We think not. . . . The homestead law, being remedial in its character, should receive the most liberal construction consistent with justice, for the purpose of preserving a home to the unfortunate. But it must not be forgotten that the payment of just obligations is the foundation on which rests our industrial and commercial prosperity. And the design of the homestead law is not to enable those claiming its benefits to evade the payment of debts justly due, but to prevent the household being broken up and destroyed; and to leave under the control of the debtor the means by which he may, by economy, retrieve his fortune, and be enabled in time to meet his obligations." 4 Neb., 496.

Both the language and sentiment of this opinion we most heartily indorse as being sound law and good morals — just alike to the creditor as well as to the debtor.

To the same effect are the cases of Ashton v. Ingle, 20 Kan., 675; Bartholomew v. Hook, 23 Cal., 279; Hale v. Heaslip, 16 Iowa, 451; Elston v. Robinson, 21 Iowa, 534; Seamans v. Carter, 15 Wis., 548; Dopp v. Albee, 17 Wis., 609, in which the question was as to the

superiority of judgment liens or subsequently acquired homestead rights; and also the cases of McKeithan *v.* Terry, 64 N. C., 25; Sluder *v.* Rodgers, id., 290, which involved the construction of the constitution of that state, and were cases of execution liens; the case of Tuttle *v.* Howe, 14 Minn., 145, which was a mechanic's lien; the cases of Titman *v.* Moore, 43 Ill., 169; McCormick *v.* Wilcox, 25 Ill., 274, which were mortgage liens; and Freeman on Judgments, § 355, which relates to a judgment lien.

The following cases were reviewed and shown not to conflict with this doctrine: Trotter *v.* Dobbs, 38 Miss.; Irwin *v.* Lewis, 50 Miss.; Letchford *v.* Cary, 52 Miss.; Hawthorne *v.* Smith, 3 Nev.; Furman *v.* Dewell, 35 Iowa.

It has been contended that the cases of Trotter *v.* Dobbs, 38 Miss., 198; Irwin *v.* Lewis, 50 Miss., 363; Letchford *v.* Cary, 52 Miss., 791; Hawthorne *v.* Smith, 3 Nev., 182, and Furman *v.* Dewell, 35 Iowa, 170, established a different doctrine.

The case of Trotter *v.* Dobbs, 38 Miss., turned upon the construction of a statute of that state, of which the creditor was so chargeable with notice that it must be held to have entered into the contract.    Lessley *v.* Phipps, 49 Miss., 790.    The opinion says: "No legal right of the plaintiff, in the judgment rendered before the marriage, is impaired; because, by the statute, his judgment, though generally a *lien* on all the property of the defendant, was subject to the restriction that if he did not sell certain property of the defendant before he became a householder and had a family, it should be exempt from execution upon his afterwards assuming that relation.    This was the effect of the statute exempting property from execution; it was a part of the policy of our laws, and the judgment was of course rendered subject to the rule established by the statute."    38 Miss., 200.

The subsequent cases of Irwin *v.* Lewis, 50 Miss., 363, and Letchford *v.* Cary, 52 Miss., 791, are based upon the prior case of Trotter *v.* Dobbs, *supra,* and the construction therein given to the statute.

In the case of Hawthorne *v.* Smith, 3 Nev., 182, Hawthorne had previously moved upon the land, and was in the actual occupancy of it as his homestead at the date of the institution of the suit and the levy of the attachment, though he had not filed a formal declaration of his intention to make it a homestead.    The court held that it was his *homestead in fact,* and that under the facts of that case the homestead right was superior.

The case of Furman *v.* Dewell, 35 Iowa, 170, in which there was a change from an old to a new homestead, and in which, for the

purposes of the opinion, it was conceded that the homestead right had in fact attached, was under a statute which provided that the owner might from time to time change his homestead, but that "such changes shall not prejudice conveyances or liens made or created previously thereto;" and which further provided that "the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former homestead would have been exempt, but in no other or in any greater degree." 35 Iowa, 171. In this case it was held that the defendant having changed his homestead from premises on a lot in a town to a tract not exceeding forty acres in the country, and of no greater value than the first homestead, the new one was exempt.

The effect of that decision was to uphold the judgment lien, not to impair it, for the new homestead was held exempt to the extent of the value only of the old one, and the lien was changed from the one to the other.

The authorities cited in this opinion, and doubtless many others which could be found, place it beyond question that, as a general rule, a previously acquired lien, whether general or special, voluntary or involuntary, upon real property, cannot be subsequently defeated by the voluntary act of the debtor in attempting to make it his homestead. The only exception which now occurs to us arises under our decisions in insolvent estates, in which it has been held that, under the peculiar phraseology of our statute, the allowance made to the surviving widow and children would defeat a prior specific lien. In those cases, however, the creditor is held bound to have taken notice of the existing statute, and to have contracted in reference to it.

We do not decide that the legislature might not have the power, whether the courts may have or not, to declare that a homestead right might attach to property *acquired subsequently* to the rendition of a judgment against the debtor, when brought with a present *bona fide* intention to dedicate it as a homestead, coupled with acts of preparation and subsequent early occupation as such.

JUDGMENT AFFIRMED.

[Opinion delivered June 23, 1882.]