# HUNTER ET AL. *v.* DOWNS ET AL.
## IN RE WIGHTMAN'S ESTATE

No. 2907

February 3, 1931.                              295 P. 438.

*Roberts, Scanlan & Ingram,* for Appellants:

*A. L. Haight,* for Respondents :

## OPINION

By the Court, DUCKER, J.:

Fred M. Wightman, a resident of Churchill County, Nevada, died testate on or about the 25th day of September, 1927. His will contained, among other provisions, the following:

"I give and bequeath to Mrs. Ida Hunter the proceeds of my life insurance policy of $10,000 together with eighty shares of stock of Churchill County Bank, a corporation.

"I hereby give and bequeath to my son Wayne Wightman my 320 acre ranch at Fallon, Nevada, together with the stock and equipment thereon, the same to be held

in trust for my son by H. L. Nichols until he reaches the age of thirty-five years (35). In the meantime the income is to be turned over by said H. L. Nichols to my said son.

"I hereby give and bequeath to my son Fred Wightman, Jr., the following, Fifty Thousand Dollars ($50,000) in notes and securities the same to be held in trust for my said son by H. L. Nichols until he reaches the age of thirty-five years. The income from said fund is to be turned over to my said son quarterly by said H. L. Nichols until he reaches the age of thirty-five (35) years.

"All the balance and residue of my said estate I give and bequeath equally to my two sons, Wayne Wightman and Fred Wightman, Jr., the same to be held in trust for them in the same manner as the aforesaid bequests.

"I give and bequeath to my mother, Sarah Jane Wightman Five Thousand Dollars, ($5,000)."

The will was duly admitted to probate in the district court of Churchill County on the 8th day of November, 1927, and H. L. Nichols was nominated as executor. He acted as such until his death on or about the 10th day of November, 1928. An inventory and appraisement was duly filed showing that the property of the estate consisted of real, personal, and mixed assets, amounting in value to $163,407.74. Among these assets two insurance policies were listed, to wit: A policy of the Mutual Life Insurance Company of New York for $5,000, and a policy of the Penn Mutual Life Insurance Company for $5,000. These policies were appraised at $5,000 each. On the 12th day of June, 1928, on petition of the executor, the court entered an order for partial distribution and among other items ordered the executor to pay to Ida Hunter, one of the beneficiaries named in the will, the sum of $10,000. On the 30th day of January, 1928, the court made and entered an order directing the executor of the estate to pay to Art L. Downs, the guardian of the person and estate of Fred Wightman, Jr., the sum of $300 per month for the care, maintenance, and support of the minor; said payments to commence from the 1st day of February, 1928, and to continue therefrom until

the further order of the court. This monthly allowance said minor son received until the 1st day of March, 1930. On the 28th day of January, 1930, the guardian of said minor filed a petition to set apart for the latter's use the proceeds from the Mutual Life Insurance Company of New York policy in the sum of $5,495; and from the Penn Mutual Life Insurance Company policy the sum of $5,115.53; and from the Equitable Life Assurance Society of the United States the sum of $300— amounting in all to the sum of $10,910.53.

It was alleged in the petition that said sums were received by the executor and paid by said companies as moneys growing out of life insurance policies upon the life of deceased and payable to the estate after his death; that the annual premiums paid in connection therewith did not exceed the sum of $500; and that the entire amount received by the executor as aforesaid was and is personal property exempt by law from execution and not subject to administration as a part of the assets of the estate. It is further alleged in the petition that the decedent left no surviving widow but did leave surviving him a minor child, to wit, the above-named Fred Wightman, Jr., who is the only minor child and was at all times wholly dependent upon Fred M. Wightman for support and was supported by him up to the time of the latter's death. It is alleged that after the death of H. L. Nichols, and on or about the 27th day of November, 1928, Art L. Downs and Wayne Wightman were appointed administrators of the estate, with the will annexed; that they qualified and have ever since acted as such, and have in their possession and under their control all of the property and assets of said estate.

The executors of Mrs. Ida Hunter, deceased, by their attorneys filed written objections to the allowance of the petition and appeared and argued the same at the hearing. Their objections were overruled, and the court ordered the said proceeds of the life insurance policies amounting in the aggregate to $10,910.53, to be set apart for the use of Fred Wightman, Jr., a minor, and the administrators of the estate with the will annexed

were ordered to pay over said sums to Art L. Downs, guardian of the person and estate of said minor. It was further ordered that the total of all allowances theretofore paid unto said minor or his guardian out of the funds of the estate should be deducted from the total of the proceeds of the life insurance policies set apart. It was also ordered that all payments theretofore ordered to be made by the administrators with the will annexed, to the guardian of Fred Wightman, Jr., on account of support, maintenance, and medical attention of the said minor, cease after the 1st day of March, 1930. These orders were made and entered on February 25, 1930.

From the orders overruling the objections and granting the petition, this appeal is taken.

██ Appellants' first contention is that the guardian of said minor waived the exemption of said proceeds from life insurance policies by electing to petition for and accepting the sum of $300 monthly for the minor's care, support, and maintenance.

Appellants have produced no authority to support this contention and the probate statutes involved do not sustain it. The following sections control the matter:

Section 101 of the act concerning estates of deceased persons provides as follows:

"Upon the return of the inventory or at any time thereafter during the administration, the court or judge, of his own motion or an application, may set apart for the use of the family of the deceased all personal property which is exempt by law from execution, and the homestead as designated by the general homestead law now in force, whether such homestead has theretofore been selected as required by said law or not, and the property thus directed to be set apart shall not be subject to administration." (Stats. 1897, c. 106.)

Section 102 of said act provides:

"If the whole property exempt by law be set apart, and should not be sufficient for the support of the widow, child or children, the district court or judge shall make

such reasonable allowance out of the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate, which in case of an insolvent estate shall not be longer than one year after granting letters of administration."

No authority is given either expressly or impliedly by either of these sections to a family of a deceased or member thereof to take an allowance out of the general assets of an estate in lieu of exempt property or the homestead. It is only where there is no exempt property or it is insufficient for the support of the family that resort may be had for such purpose to nonexempt property. Exempt property belonging to an estate is dedicated by section 101 to the use of the family of the deceased, and when an application is duly made to set apart such property the court or judge is without any discretion in the matter. The words "may set apart," used in the statute, have been held by this court to be mandatory and to be read, "shall set apart." In Re Walley's Estate, 11 Nev. 260.

An application and order for an allowance made first out of general assets could not operate to deprive a family of the privilege conferred by section 101 unless on some principle of estoppel, which is not applicable here. That the court, when it made its last order, was conscious that exempt property alone, if sufficient, could only be set aside for the use of the minor, is apparent from the fact that it was ordered that the total of former allowances should be deducted from the proceeds of the life insurance money and that allowances under the previous order should cease.

It is also contended that the guardian waived the privilege of having the proceeds of the life insurance policies set apart for the use of the minor by not making a timely application. In so far as the mere lapse of time is concerned, this contention is answered by the statute, which says that the application to have exempt property and the homestead set apart for the use of the family may be made at any time during administration.

The application and order were made within the time required by the statute. Consequently no question as to whether it was filed within a reasonable time can arise.

The case of Estate of Pillsbury, 175 Cal. 454, 166 P. 11, 3 A. L. R. 1396, cited by appellants, is not in point. It was there held that a statute like ours did not of its own force set exempt property apart for the family of a deceased, and that the children of decedent, adopted by third persons after the death of their parent and before application to set apart exempt property, cease to be members of the decedent's family and lose their right of exemption. No question of an application by a family of a deceased was present in that case.

█ But it is contended that the application and order came too late by reason of the fact that the proceeds of the life insurance policies to the extent of $10,000 had been distributed to legatee Mrs. Ida Hunter by order of partial distribution made on June 12, 1928, and duly paid over to her. It is argued that the decree whereby the court distributed the proceeds from the Mutual Life Insurance Company of New York in the sum of $5,000 and the Penn Mutual Life Insurance Company in the sum of $5,000 to Ida Hunter, and her receipt thereof, completely and finally closed that part of the estate; that if the guardian of the minor was dissatisfied, his remedy was by motion to vacate and amend in accordance with the provisions of section 5084, Rev. Laws, and rule XLV of district court rules, and that not having done so, and having made no objections to the decree of partial distribution, the matter is res adjudicata. But it does not appear that the $10,000 distributed to Ida Hunter was the proceeds of said life insurance policies. While the petition for partial distribution mentions the bequest to Ida Hunter and other bequests of the will, and asks for a partial distribution in accordance with these bequests, the petition was granted only in part. The $10,000 ordered distributed was not described in the decree as life insurance proceeds, nor was it so described in the receipt filed by

Ida Hunter for the amount distributed to her. On the contrary, the court in its written opinion which we find in the record, expressly disclaimed having distributed any moneys received from insurance policies. The court said:

"We call attention to counsel that the Court did not, by partial distribution or otherwise, distribute any specific moneys received from insurance policies. We made a partial distribution of certain moneys belonging to the estate. This Court at the time of said partial distribution had no thought in mind other than to carry out, partially at least, the mind or will of the testator, *which we did, by a partial distribution of funds, under general bequests of the will.*" (The italics are the trial court's.)

Furthermore, it does not appear that the testator in his will made a bequest to Mrs. Ida Hunter of the two life insurance policies of $5,000 each, returned in the inventory. The bequest is "the proceeds of my life insurance policy of $10,000." He may not have had such a policy at the time of his death.

■■ Whether in a proper case respondents would be permitted to introduce evidence to show that the testator in the bequest of the proceeds of one life insurance policy for $10,000 intended the two policies for $5,000 each, we need not intimate an opinion. But as the case stands now there is nothing tending to show such identity. Certainly in the absence of anything else in the will bearing on the matter their identity may not be established by judicial construction. In the absence of evidence to the contrary, it must be presumed that property mentioned in the will has been described correctly. 40 Cyc. 1427; Hopkins v. Holt, 9 Wis. 228.

We think, therefore, that the trial court committed no error in overruling the objection to the petition to set apart the proceeds of the life insurance policies for the support of the minor son. These proceeds were exempt property by virtue of the provisions of paragraph 14 of section 5288, Rev. Laws of Nevada.

Affirmed.