OPINION
 

 Per Curiam:
 

 This is an appeal from a post-judgment order of the district court in which the court refused to recognize appellant Donald Herndon’s (Herndon) homestead exemption. On appeal, Herndon contends that the district court erred in failing to recognize his homestead exemption, because he is in compliance with Nevada’s constitutional and statutory requirements. We agree and vacate the district court’s order.
 

 FACTS
 

 On December 14, 1990, Richard and Sandra Grilz (the Grilzes) filed a complaint against Herndon dba Herndon Construction, alleging breach of contract and breach of express warranties in connection with a house that the Grilzes purchased
 
 *875
 
 from Herndon. Several years later, on September 8, 1993, the Grilzes received a judgment awarding them $25,000.00 in damages plus interest and $12,000.00 in attorney’s fees.
 

 Faced with this judgment, on December 7, 1993, Herndon created a new corporation, Quality Homes of Nevada (Quality Homes), and transferred title to the three homes owned by Herndon Construction to Quality Homes. In an attempt to collect on their judgment, the Grilzes filed writs of garnishment on Quality Homes, but those efforts proved to be unsuccessful. However, a search of the Clark County title records showed that Herndon owned a property located at 8870 Redwood Lane, Las Vegas, Nevada. Further research showed that Herndon had leased the property to Joseph and Donna Brammer (the Brammers). Under the lease, the Brammers paid a nonrefundable $26,000.00 down payment, paid $1,472.50 a month for the next twelve months, and were to pay $1,610.25 a month for the remainder of the lease. The lease had a thirty-year term, after which the Brammers were allowed to purchase the property for $1.00. The lease was recorded on March 31, 1993.
 

 The Grilzes executed a levy on the Redwood Lane property, and a sheriff’s sale was scheduled for May 5, 1994. During the two weeks preceding the scheduled sale, counsel for the Grilzes received numerous phone calls from both Joseph Brammer and his counsel requesting that the sale be postponed so that the Brammers could obtain financing to pay off Herndon under the terms of their purchase agreement (lease). In order to accommodate the Brammers, the Grilzes agreed to postpone the sale. Thereafter, on April 29, 1994, the Brammers entered into an agreement with Herndon in which they agreed to accept a promissory note in the amount of $48,300.00 (reducible to $34,000.00 if paid before November 1, 1994), secured by a first deed of trust on the Redwood Lane property, in exchange for a quitclaim deed to any interest the Brammers had in the property. On the same day, Herndon filed a declaration of homestead.
 

 On May 31, 1994, the Grilzes filed a motion to determine the issue of exemption in an attempt to decide whether Herndon’s homestead declaration would defeat their lien on the Redwood Lane property. On June 8, 1994, Herndon filed a petition for relief in bankruptcy under Chapter 7 of Title 11 of the United States Code. The Grilzes filed a motion to lift the automatic stay and allow the District Court of Nevada to determine whether Herndon possessed a valid homestead on the Redwood Lane property. On October 25, 1994, the United States Bankruptcy Court granted the Grilzes’ motion and remanded the case to the district court.
 

 The district court heard arguments on February 28, 1995. In
 
 *876
 
 an order dated March 13, 1995, the court found Herndon’s homestead exemption would not preclude the Grilzes from executing a levy on the Redwood Lane property. Herndon now appeals.
 

 DISCUSSION
 

 Nevada Constitution, article 4, section 30, recognized the Nevada homestead exemption, and states:
 

 A homestead as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife when that relationship exists; but no property shall be exempt from sale for taxes or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon; Provided, the provisions of this Section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife, and laws shall be enacted providing for the recording of such homestead within the County in which the same shall be situated[.]
 

 NRS 115.010 (1993) provides the following statutory limitation to the homestead exemption:
 

 1. The homestead is not subject to forced sale on execution or any final process from any court, except as provided in subsections 2 and 3.
 

 2. The exemption provided in subsection 1 extends only to the amount of equity in the property held by the claimant which does not exceed $95,000.00 in value.
 

 3. The exemption provided in subsection 1 does not extend to process to enforce the payment of obligations contracted for the purchase of the property, or for improvements made thereon, including any mechanic’s lien lawfully obtained, or for legal taxes, or for:
 

 (a) Any mortgage or deed of trust thereon executed and given; or
 

 (b) Any lien to which prior consent had been given through the acceptance of property subject to any recorded declaration of restrictions, deed restrictions, restrictive covenant or equitable servitude, specifically including any lien in favor of an association pursuant to NRS 116.3116 or 117.070, by both husband and wife, when that relation exists.
 

 Herndon contends that he purchased the Redwood Lane property from the Brammers with the intention of making the property a home for himself and his daughter. Since the time of the
 
 *877
 
 purchase, Herndon and his daughter have continuously lived on the property and treated it as their home. Herndon argues that because none of the exceptions to the homestead exemption listed in NRS 115.010 are applicable, the district court improperly refused to recognize his homestead exemption.
 

 At the conclusion of the hearing before the district court, the court found that the lease agreement between Herndon and the Brammers was, in fact, a purchase agreement, and that Herndon did not have an interest in the property to which a homestead exemption could attach. The court also found that the Grilzes' judgment lien attached to the property before Herndon exchanged the promissory note for the quitclaim deed, and that Herndon took the property subject to the lien. Accordingly, the district court found that Herndon's homestead exemption could not defeat the lien.
 

 We have reviewed the record and conclude that the district court properly found that the agreement between Herndon and the Brammers was a purchase agreement and not a lease. Most persuasive are the terms of the agreement. The Brammers were required to make a $26,000.00 non-refundable down payment, then they were required to make monthly payments over the next thirty years, after which, they were given the option to purchase the property for $1.00. These terms are consistent with terms normally encountered when real estate is sold, not when it is leased.
 

 In Harrison v. Rice, 89 Nev. 180, 183, 510 P.2d 633, 635 (1973) (citations omitted), this court stated:
 

 An equitable conversion occurs when a contract for the sale of real property becomes binding upon the parties. The purchaser is deemed to be the equitable owner of the land and the seller is considered to be the owner of the purchase price. This, because the maxim that equity considers as done that which was agreed to be done.
 

 Since Herndon sold the property to the Brammers, under the doctrine of equitable conversion, Herndon held only a legal interest in the property and therefore lacked an interest to which a homestead exemption could attach. However, for the same reason, Herndon did not possess an interest to which the Grilzes' lien could attach. But, when Herndon re-purchased the property from the Brammers, Herndon became vested with an equitable interest to which both the lien and the homestead exemption could attach. Therefore, both Herndon's right to claim a homestead exemption and the Grilzes' lien attached to the property simulta-
 
 *878
 
 neously at the moment that Herndon acquired an equitable interest in the property. The district court therefore erred in finding that the Grilzes' lien attached before Herndon's right to claim a homestead exemption.
 

 Nevada has consistently given great deference to homesteads. In Jackman v. Nance, 109 Nev. 716, 718, 857 P.2d 7, 8 (1993), this court stated:
 

 The purpose of the homestead exemption is to preserve the family home despite financial distress, insolvency or calamitous circumstances, and to strengthen family security and stability for the benefit of the family, its individual members, and the community and state in which the family resides. These values are of greater importance to the polity than the just demands of those who may be financially disadvantaged as a result of the homestead exemption.
 

 Early Nevada decisions have held that a subsequent declaration of homestead will defeat a prior existing lien perfected against the property when the lien attaches at a time when the property has the character of a homestead. See Estate of David Walley, 11 Nev. 260 (1876); Hawthorne v. Smith, 3 Nev. 164 (1867). The Federal courts have interpreted Nevada law in a similar fashion. See Myers v. Matley, 318 U.S. 622 (1943); Nevada Bank of San Francisco v. Treadway, 17 F. 887 (D. Nev. 1883). However, whether a homestead exemption will defeat a judgment lien when both the right to claim a homestead and the lien attach simultaneously to a piece of property is an issue of first impression for this court. While we note that there is a split of authority among the states, we now recognize as a general rule that when the right to claim a homestead and a judgment lien attach simultaneously to a piece of property, the homestead right prevails. See 40 Am. Jur. 2d Homestead § 94 (1968); 40 C.J.S. Homesteads § 53 (1991). This holding favors the establishment of homesteads and promotes Nevada's long-standing policy of interpreting the homestead exemption liberally in favor of families.
 

 Since Herndon filed a declaration of homestead at a time when he had the right to claim a homestead exemption, unless one of the exceptions to the homestead exemption listed in NRS 115.010 (1993) is applicable, Herndon is entitled to have his homestead exemption recognized. We have reviewed the record and conclude that none of the exceptions listed in NRS 115.010 (1993) are applicable to Herndon. Accordingly, we conclude that the district court erred when it failed to recognize Herndon's homestead exemption.
 

 
 *879
 

 CONCLUSION
 

 We conclude that because Herndon’s right to claim a homestead exemption and the Grilzes’ lien attached to the Redwood Lane property simultaneously; and because none of the exceptions to the homestead exemption listed in NRS 115.010 (1993) are applicable to Herndon, Herndon is entitled to claim a homestead and is entitled to all of the protections that that exemption provides. We have considered the remaining issues on appeal and conclude that they lack merit. In accordance with these holdings, the district court’s order refusing to recognize Herndon’s homestead exemption is hereby vacated.